Forrest BUGHER, Richard Wren, Reese Hammond, J. A. McMahon, A. W. McIntyre, Hailey Roberts, John E. Cullerton and Richard Dennis, as Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers,

and

Carl B. Pratt, Vergil Belfi, John Faust and Harold B. Huhn, as Trustees of the Health and Welfare Fund of Local 2, International Union of Operating Engineers and International Union of Operating Engineers, Local No. 2, AFL-CIO

v.

CONSOLIDATED X-RAY SERVICE CORP.

No. CA 3-76-0929-C.

United States District Court,
N. D. Texas,
Dallas Division.

June 2, 1981.

William N. Wheat, Houston, Tex., Bernard M. Baum and Louis E. Sigman, Chicago, Ill., for plaintiffs.

Hugh M. Smith, Dallas, Tex., for defendant.

## OPINION

W. M. TAYLOR, Jr., District Judge.

Defendant entered into contracts with Plaintiff Local Union 2 in 1968, 1971, 1974, 1977 and 1980 in which it agreed to pay sums to the Plaintiff Trustees on behalf of some of its employees and to withhold union dues from its union employees and remit them to the Plaintiff Local, all sums to be paid on a regular basis.

Plaintiffs contend that Defendant has not paid all sums due and that because of this deficiency, they have had to conduct one audit of Defendant's books and must conduct another so as to discover Defendant's liability.

The Court finds jurisdiction under the Labor Management Relations Act, 1947, 29 U.S.C. § 185 and Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132.

Defendant is a Nevada corporation whose principal place of business is in Dallas, Texas. It is in the business of conducting nondestructive testing in laboratories and in the field. It does conduct its business in interstate commerce.

Plaintiff I.U.O.E. Local 2 is a labor organization based in St. Louis, Missouri. It represents employees engaged in nondestructive testing in all states of the Union.

The other two Plaintiffs are a pension fund and a health and welfare fund benefiting the members of the Plaintiff Union. The Plaintiff Funds are third-party beneficiaries of agreements entered into by Local 2 and various employees engaged in non-destructive testing, including the Defendant.

Plaintiff Local and Defendant have entered into a series of three-year collective bargaining agreements. The first covered 1968–71. The second from 1971 to 1974. The third from 1974 to 1977. The fourth from 1977 to 1980. The fifth, and current, from 1980 until 1983.

Defendant also agreed to make contributions to the Plaintiff Pension Fund in a Participating Agreement signed in 1971.

Each of the collective bargaining agreements stated the coverage of the agreement in the first article of the agreement.

The first agreement that we are concerned with here is the 1971–1974 agreement. Article I of that agreement specified:

This agreement shall apply to and cover all employees engaged in field nondestructive testing.

Article I of the 1974–1977 agreement was changed to read:

This agreement shall apply to and cover all employees engaged in field nondestructive testing, excluding Aleska, Nuclear Power Plants and visual inspection.

The language of Article I of the 1977–1980 agreement was changed significantly. It read:

> This agreement shall apply to and cover all employees engaged in field pipeline, or pipeline related nondestructive testing including all employees who furnish rigs and equipment in the performance of services; excluding Aleska, Nuclear Power Plants, laboratory work and that work considered in the industry as "city" or "call-out" work; and the Company recognizes the Union as the exclusive bargaining agent for all such employees.

In these collective bargaining agreements and in the pension fund participating agreements, Defendant agreed to deduct contributions to the two Plaintiff funds and dues to the Plaintiff Union.

Plaintiffs charge that Defendant failed to properly deduct these contributions and dues and remit them to the respective Plaintiffs in accord with the coverage of the three respective Articles I.

Defendant's principal defenses are:

1) All sums have been properly paid,

2) Plaintiffs are barred from suit because of either the applicable Statute of limitation or laches, and

3) Plaintiffs must submit this dispute to arbitration.

These contentions shall be discussed in reverse order.

*Arbitration*

■ It is clear that the two Plaintiff Funds are not parties to the collective bargaining agreements. They are, at most, third-party beneficiaries of those agreements. The collective bargaining agreements do contain arbitration clauses, but the participation agreements do not contain arbitrative clauses. The collective bargaining agreements do not specifically require

the Plaintiff Funds to arbitrate any grievances that they may have with the Defendant. As has been held before, Section 302 of the Labor-Management Relations Act, 29 U.S.C. § 186, mandates that welfare and pension funds should be controlled by the unions and that without specific provision in a collective bargaining agreement, welfare and pension funds should not be compelled to arbitrate their grievances with employers.[1] So the Plaintiff Funds need not submit their claims to arbitration and are properly before this Court.

■ Though Plaintiff Union is bound to arbitrate various grievances that it may have with Defendant, this is not one of those grievances.

Article VII, section (1) of the 1970 agreement, Article VI, section (1) of the 1974 agreement and Article VI, section (1) of the 1977 agreement all end with the same last sentence. That sentence reads:

> The deliberate failure or refusal by an employer to make deduction and/or remittance of dues as herein provided, following approval by the membership and upon appropriate authorization shall constitute a gross breach of contract in consequence of which the Union may take appropriate economic and/or legal sanctions.

As Plaintiff Union contends that Defendant has deliberately failed or refused to deduct and remit dues, it is clear that under this language of the agreements, that it could either strike or sue Defendant and it has chosen to sue.

*Statute of Limitations or Laches*

■ Each of the contracts that the Parties have entered into are written and are therefore governed by Article 5527 of Vernon's Annotated Texas Civil Statutes.[2] But

1. See *Owen v. One-Stop Food and Liquor Store,* 359 F.Supp. 243 (N.D.Ill., 1973).

2. Art. 5527 read at the time of the filing of this Civil Action:

> There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all

actions or suits in court of the following description:

1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing.

2. Actions for the penalty or for damages on the penal clause of a bond to convey real estate.

the limitations period is inconsequential in this case as it has been tolled by the actions of the Defendant.

Each of the Collective Bargaining Agreements required Defendant to report and remit the withheld dues and fund contributions on a regular basis. Defendant's officers and employees did make the required reports.

Those report forms contained a certification clause which reads as follows:

We certify that this report is a true and complete report of the hours worked by employees represented in collective bargaining by the local union shown above and such other employees as may be approved by the board of trustees but in no event includes any other employees, owners, partners or proprietors of this firm.

Plaintiffs' central contention is that there were additional hours worked by employees covered by the collective bargaining agreement that were not reported and for which dues and fund contributions were not remitted. Plaintiffs are saying that these certifications were false and misleading.

In Texas Law, this is fraudulent concealment which tolls a statute of limitations. See *Atlantic Richfield Co. v. CRA, Inc.*, 430 F.Supp. 1299 (N.D.Tex., 1975). A directly comparable situation to the present one was presented in *Seymour v. Hull and Moreland Engineering*, 418 F.Supp. 190 (C.D.Cal., 1976). That Court held that that employer was in a position of trust and confidence as to the trustees of those funds and that the breach of trust by the employer tolled the pertinent statute of limitation. This Court agrees with the reasoning behind that decision and finds the statute of limitation was tolled and that Plaintiffs may seek damages as far back as they have asked for, back to February 20, 1971.

■ The claim for laches is based on a letter of July 30, 1974, which was sent to Defendant by an attorney for the Plaintiff Local.[3] This letter purported to terminate the then current collective bargaining agreement.

Apparently, Plaintiff Local and Defendant were having difficulties at that time and the Business Manager of Plaintiff Local instructed the attorney to send the letter. Subsequently, at the behest of Defendant's President, a meeting was held, the difficulties were ironed out, it was agreed that the letter would be withdrawn and no strike would take place. Moreover, Defendant continued to employ the same employees that were covered by the current collective bargaining agreement and continued to make remittances of dues and fund contributions without skipping a beat.

If there are any laches in this instance, they must run against Defendant. Defendant cannot be allowed to *continue* to plead the termination of a contract when it continued to accept the benefits of that contract years after the purported termination of the contract. To do so would be fundamentally unfair to the Plaintiffs. This the law will not allow.

*Proper Payment of Dues and Contributions*

■ The difficulties between the Plaintiffs and Defendant mentioned above were apparently ongoing. In an effort to put the major disputes in dollar and cents terms, the Plaintiffs authorized an audit of Defendant's books and records. This audit was commenced without objection of the Defendant pursuant to a provision of the Trust Agreement of Plaintiff Pension Fund which Defendant had agreed to be bound by when it signed the Participating Agreement. The audit was performed over a one

---

3. Actions by one partner against his co-partner for a settlement of the partnership accounts, or upon mutual and current accounts concerning the trade of merchandise between merchant and merchant, their factors or agents; and the cause of action shall be considered as having accrued on a cessation of the dealings in which they were interested together.

3. Defendant has also alleged estoppel but if there is any difference between laches and estoppel, the Court sees no significant difference in this instance.

working week period in early February, 1976.

During the audit, Defendant's President refused to turn over to the auditor the weekly time reports of its employees and its contracts with clients. Without these records, it was impossible for the auditor to discern the duties of the individual employees and the work performed on the various jobs.

The auditor went ahead with the audit and on June 3, 1976, Defendant was presented with a bill for dues, contributions and costs of the audit along with a copy of the transcribed work papers of the audit.

The costs and expenses of the audit that were billed were $11,554.66. The Pension Fund contributions billed were in the sum of $63,114.33. The Welfare Fund contributions billed were $41,198.00. And the working dues came to a total of $7,371.27.

Upon the failure of Defendant to pay these sums by July 2, 1976, as requested on June 3, 1976, this civil action was commenced on July 12, 1976.

In 1977, Defendant had prepared what amounts to a rebuttal audit. The differences between the two audits are essentially based on differing interpretations of the coverage clauses of the Collective Bargaining Agreements as set out above.[4]

Defendant's rebuttal assumed that the Collective Bargaining Agreement covered employees who were members of Plaintiff Local and who were working on cross-country pipeline jobs. Plaintiffs say that the agreements speak for themselves and are clear and unambiguous.

The Court agrees with Plaintiffs. Moreover, the clear language of these contracts has been upheld by a court before. The Court in *Forrest Bugher, et al. v. Cleveland X-Ray Inspection and Cleveland Industrial*

*Testing, Inc.,* (Case No. C–77–186–B, N.D. Oklahoma, Nov. 22, 1978) held that the same language that is before this Court meant what it said. That all employees engaged in field nondestructive testing were covered by the contract, not just union members who worked on cross-country pipelines.

The dictionary definition of "field,"

(A)n area where practical work is done as by a social worker, geologist, etc., away from the central office laboratory, or the like . . . ,[5]

does seem to be sufficient.

Defendant has contended that there have been parol agreements which have modified the usage of the term "field" or that it has a special meaning in the nondestructive testing business. Besides trying to change the terms of a written contract without a showing of a new consideration, the Court does not find the facts to be as alleged by Defendant. Before the substantial change in the coverage clause in the 1977–1980 contract, it appears that Defendant and Plaintiff Union were in a cat and mouse game. Plaintiff Union tried to enforce the written contract as best it could *in the face of Defendant* but was not always successful.

Also, the contracts are clear in stating that "employees" are covered, not just union members. This language, too, speaks for itself. Moreover, it would appear that this language is mandatory. The Labor-Management Relations Act makes it mandatory that a labor union represent all the employees of a bargaining unit, not just the union members.[6]

As to hours worked, the contracts are clear in guaranteeing 40 hours per week per employee in Article VII, paragraph 11.

So Defendant is liable to Plaintiffs for contributions due for all employees working

---

**4.** Plaintiffs have conceded an error in the sum of $3,272.40 for Pension Fund contributions.

**5.** Webster's New World Dictionary 519, at 8.a (2nd College Ed. 1970).

**6.** 29 U.S.C. § 159.

on nondestructive testing in the field on a 40-hour per week basis.

The differences between Plaintiffs' audit and Defendant's rebuttal audit may be attributable to two things. First, Defendant's refusal to remit contributions and dues on the above basis. Second, any inaccuracies in Plaintiffs' audit that were caused by Defendant's unwillingness to turn over its records to the auditor.

So the Court finds that it accepts the assumptions underlying Plaintiffs' audit and rejects Defendant's counter-audit. Judgment will therefore be given in the sums shown on Plaintiffs' audit minus the credit mentioned in footnote 4.

The Court will also retain jurisdiction of this Civil Action and order the Defendant to submit to a further audit so that Plaintiffs' recovery shall be complete.

Plaintiffs have prayed for attorneys' fees and other costs. The Court concludes that under 29 U.S.C. § 1132(g) and its equitable powers, that it can, and it should, award the attorneys' fees, interest and costs, including auditors' fees, requested by the Plaintiffs and stipulated to be reasonable by Defendant in full.

Plaintiffs' counsel are requested to propose a form of Judgment in line with the rulings of this opinion.