**620**

Charles M. BYRNES, James M. Beros, William M. Cherilla, Walter Chrzan, John Puskarich, Leslie Breman, Julius R. Casali, John W. Flanigan, James H. Hutchinson, Jr., and Joseph E. Zaucha, Trustees of the Western Pennsylvania Teamsters and Employers Pension Fund

v.

DeBOLT TRANSFER, INC.

W.F. HARDY, Charles M. Byrnes, William M. Cherilla, Michael Garnder, Steve Missonak, Joseph P. Santone, John W. Flanigan, James H. Hutchinson, Jr., John O'Connor, and Joseph E. Zaucha, Trustees of the Western Pennsylvania Teamsters and Motor Carriers Welfare Fund

v.

DeBOLT TRANSFER, INC.

Appeal of Charles M. BYRNES, et al., Trustees of the Western Pennsylvania Teamsters and Employers Pension Fund, and W.F. Hardy, et al., Trustees of the Western Pennsylvania Teamsters and Motor Carriers Welfare Fund, No. 83–5556.

Appeal of DeBOLT TRANSFER, INC., No. 83–5557.

Nos. 83–5556 and 83–5557.

United States Court of Appeals, Third Circuit.

Argued April 23, 1984.

Decided Aug. 10, 1984.

As Amended Aug. 21, 1984.

Rehearing and Rehearing In Banc Denied Sept. 11, 1984.

Charles J. Streiff (argued), Vincent P. Szeligo, Wick, Rich, Fluke & Streiff, Pittsburgh, Pa., for appellants.

Debra D. Patti (argued), MacMullan & Associates, P.C., Pittsburgh, Pa., for appellee.

Before ALDISERT, WEIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Plaintiffs, Charles M. Byrnes, et al., trustees of the Western Pennsylvania Teamsters and Employers Pension Fund, and W.F. Hardy, et al., trustees of the Western Pennsylvania Teamsters and Motor Carriers Fund (the Funds), appeal from a judgment of the United States District Court for the Western District of Pennsylvania. They contend that the court erred in rejecting their requests that it apply a six-year statute of limitations and that it toll the applicable statute of limitations. Defendant, DeBolt Transfer, Inc. (DeBolt), a freight carrier, cross-appeals from the same judgment in which the court found it liable to plaintiffs for the sum of approximately $185,000. We affirm in part and reverse in part, and remand to the district court for further proceedings consistent with this opinion.

### I.

Beginning in 1973, DeBolt agreed in a series of collective bargaining and trust agreements to make regular contributions to the Funds on behalf of a wide range of employees.[1] The payments it subsequently made were by means of a self-reporting system: when the Funds sent it the monthly invoices, DeBolt would adjust them, list the names of those individuals on whose behalf it contributed, and return the invoices to the Funds with the tendered payment.

In the middle of 1980, the Funds instituted an audit of DeBolt's records pursuant to

---

**1.** The relevant agreements are the National Master Freight Agreement, the Eastern Conference Area Iron & Steel Rider, and the Teamsters Joint Council No. 40 Over-The-Road Supplemental Agreement.

the audit program authorized by the agreements. Based on both information uncovered by a preliminary audit and DeBolt's denial of access to employment records, the Funds' trustees brought suit on October 24, 1980, under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185 *et seq.*, alleging that DeBolt had systematically failed to contribute on behalf of an entire range of individuals for whom the agreements provided that it contribute. On stipulated facts, the district court on June 30, 1983 entered summary judgment for plaintiffs with regard to each of the categories of employees for which they claimed defendant had wrongfully failed to contribute—non-union owner-operators, fleet owners, owner-operators at the Neville Island operation, and individuals who had worked less than 1,000 hours. The district court also held, however, that any payment that should have been made prior to three years before the date on which the suit had been filed could not be recovered because of the three-year statute of limitations in the Pennsylvania Wage Payment and Collection Law, Pa.Stat.Ann. tit. 43, § 260.9a(g) (Purdon 1983). The district court also concluded that the undisputed facts did not justify tolling the statute of limitations. It entered summary judgments for the Pension Fund in the amount of $149,378.78 and for the Welfare Fund in the amount of $35,252.78. As noted above, each side appeals.

## II.

### A.

Defendant first contends that, under section 202 of ERISA, 29 U.S.C. § 1052, it need not have made contributions to the pension fund on behalf of employees until they worked 1,000 hours in a twelve month period.[2] The district court properly rejected this untenable argument.

■ The district court correctly noted that the 1,000 hour requirement has nothing to do with DeBolt's obligations in this case. That requirement merely establishes a statutory minimum after which pension rights begin to vest in employees. The requirement in no way purports to supercede the contracts entered into between the parties under which DeBolt agreed to contribute pursuant to the appropriate collective bargaining agreements on behalf of individuals who work beyond the thirty-day probationary period. *See Talarico v. United Furniture Workers Pension Fund*, 479 F.Supp. 1072, 1082 (D.Neb.1979). Accordingly, the court properly granted summary judgment on the 1,000 hour issue.

### B.

Defendant next contends that the district court erred in concluding that defendant's obligation to contribute under applicable collective bargaining agreements applied equally to union and non-union owner-operators. It claims that the agreements, as a matter of fact, do not extend to non-union drivers and, as a matter of law, may not extend to non-union drivers. We do not agree.

■ The district court properly found that, on their face, the collective bargaining agreements at issue here plainly contradict DeBolt's contention that it never incurred an obligation to contribute on behalf of non-union owner-operators. Article 40(2)(a) of the Eastern Conference Area Iron & Steel Rider defines employees under the agreements to be "any driver, chauffeur or

---

**2.** Section 202(a)(1)(A) provides:

No pension plan may require as a condition of participation in the plan, that any employee complete a period of service with the employer or employers maintaining the plan extending beyond the later of the following dates—

(i) The date on which the employee attains the age of 25: or

(ii) the date on which he completes 1 year of service.

Section 202(a)(3)(A) provides:

For purposes of this section, the term "year of service" means a 12-month period during which the employee has not less than 1000 hours of service.

driver-helper operating a truck, tractor ... or any other vehicle ...." Article 40(2)(c) and Article 55(4) likewise state that "hired or leased equipment shall be operated by an employee of the certificated or permitted carrier." In sum, these provisions of the collective bargaining agreements negate DeBolt's contentions that it was obligated to contribute only on behalf of union employees. The defendant can point to no provision in any of the agreements that supports its claim that only union members were to receive the benefits of DeBolt's contributions.

The absence of any distinction in the agreements between union and non-union members can be easily explained: the law does not permit such a distinction. Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), provides as follows:

It shall be an unfair labor practice for an employer—by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization ....

The Supreme Court made clear in *Radio Officers' Union v. NLRB*, 347 U.S. 17, 39–42, 74 S.Ct. 323, 335–337, 98 L.Ed. 455 (1954), that section 8(a)(3) meant precisely what it said: an employer may not encourage or·discourage union membership by means of discrimination. The district court found that DeBolt's practice of making contributions to the Funds on behalf of union members only will encourage union membership. Not even DeBolt disputes this observation. Accordingly, section 8(a)(3) prohibits such a practice.

On appeal, DeBolt seems to recognize the futility of claiming that it may contribute only on behalf of union owner-operators. Thus, it seeks to subtly shift the trappings of its argument, contending that it incurred no obligation to contribute on behalf of non-union owner-operators because non-union owner-operators are not "employees" within the meaning of the collective bargaining agreements. Such an argument lacks merit.

As noted above, Article 40(2)(c) of the Iron & Steel Rider specifically sets forth the employees covered by the agreement. With regard to hired or leased equipment, the agreement provides that:

In all cases, hired or leased equipment *shall be operated by an employee of the certificated or permitted carrier.* The Employer expressly reserves the right to control the manner, means and details of and by which the owner-operator performs his services, as well as the ends to be accomplished. (Emphasis added.)

Article 55(4), the provision devoted to owner-operators, repeats verbatim the conditions of Article 40. Now, however, DeBolt contends that non-union owner-operators are *not* employees because DeBolt simply does *not* exercise control over them. In short, DeBolt asks us to relieve it of its obligations under a series of collective bargaining agreements, resorting to subtle and specious reasoning. We decline to do so.

DeBolt places great weight on *Todd v. Benal Concrete Construction Co.*, 710 F.2d 581 (9th Cir.1983). In *Todd,* defendant Benal, a construction company, had obligated itself in a collective bargaining agreement to treat owner-operator ditch trenchers as employees and thus to contribute on their behalf to four trust funds. Benal subsequently failed to make such contributions. The Ninth Circuit permitted Benal to get out from under its contractual obligation because it concluded that, under the common law agency test adopted by that court, the unregulated ditch trenching operations at issue there demonstrated that those owner-operators were in fact independent contractors rather than employees, regardless of the contractual provision to the contrary.

Whatever the merits of the *Todd v. Benal* approach, we decline to extend the principle of that case to cover the undisputed facts before us. As noted above, DeBolt agreed that "all ... hired or leased equipment shall be operated by an employee of [DeBolt]." It likewise agreed that it "reserves the right to control the manner,

means and details of and by which the owner-operator performs his services." In his deposition, John DeBolt, II, the president of DeBolt, admitted each of these facts. He also acknowledged that under regulations of the Public Utility Commission of Pennsylvania and the Interstate Commerce Commission DeBolt is *required* as a certificated carrier to have exclusive control of the equipment leased by its owner-operators.[3]

In sum, DeBolt agreed in its collective bargaining agreements with the Teamsters Union to classify the owner-operators at issue here as employees. It agreed that it controlled the activities of such owner-operators. It agreed to contribute to the Funds on their behalf. It may not now argue that such individuals are *not* employees, *not* subject to DeBolt's control, and that DeBolt is *not* required to make contributions in their behalf. The court properly entered summary judgment for the Funds on this issue.

### C.

■ For essentially the same reasons that apply to the owner-operators, the class of sixteen unidentified individuals grouped by the parties under the category of "fleet owners" (more accurately called "fleet drivers") is entitled to contributions on its behalf.

To repeat, DeBolt agreed that "hired or leased equipment shall be operated by an employee of [DeBolt]." It likewise agreed to make contributions to the Funds on behalf of such drivers. Due in large measure to DeBolt's lack of cooperation, the Auditor could not determine who actually drove the tractor-trailers leased to DeBolt by fleet owners. The parties thus used the term "fleet owners" as a concise way of referring to such *drivers*. Contrary to DeBolt's contention, neither the Funds nor the dis-

trict court has ever suggested that the collective bargaining agreements obligate DeBolt to make contributions on behalf of the equipment owners themselves. With respect to the drivers of such equipment, however, the district court properly granted summary judgment for the Funds.

### D.

Throughout this litigation, the Funds have contended that DeBolt owes contributions on behalf of those workers at the Neville Island operation. Not surprisingly, DeBolt has steadfastly maintained that Neville Island has nothing to do with the collective bargaining agreements at issue here and that it therefore owes no such contributions. The district court agreed with the Funds.

The collective bargaining agreements provide:

> In no event will a separate division, terminal or facility be established that is not covered by the terms of the National Master Freight Agreement and the Appropriate Area Supplements.

DeBolt claims that its connections with Neville Island are too tenuous to bring that operation within the scope of this provision. It claims that, in exchange for a percentage of the revenue, it merely permits a commissioned agent to use its (DeBolt's) Interstate Commerce Commission (ICC) rights to solicit freight and haulers. The district court labeled this "a subterfuge operation ... established by DeBolt to avoid its contractual contributory obligations to the [Funds]." This may be so. As it stands, however, nothing in the record supports this harsh allegation. It is not uncommon for carriers to lease ICC rights with the approval of the Interstate Commerce Commission. *See* 49 C.F.R. § 1181.26. Because the record on the Neville Island issue

---

**3.** State and federal regulations suggest a stark contrast between the unregulated activities of the owner-operators of the construction industry in *Todd v. Benal* and the heavily regulated activities of the owner-operators of the transportation industry in the case at bar. *See* 49 C.F.R. § 1057 (1983) and 52 Pa. Code § 31.32. *See*

*also Teamsters Local 162 v. Mitchell Brothers Truck Lines,* 682 F.2d 763, 768 (9th Cir.1982) (under common law agency test, owner-operators in the transportation industry within the control of lessee-carrier constitute employees and not independent contractors as a matter of law).

is so hazy, however, we remand to the district court with direction to reexamine that operation and to make more detailed factual findings and a clearer explanation as to how it reached its result.

### III.

In their appeal, the Funds assert that the district court erred in holding that (a) the three-year statute of limitations governed the action and (b) the undisputed facts did not justify tolling the statute.

### A.

■ Because neither the LMRA nor ERISA contains an explicit limitation period with regard to actions such as this, federal courts must determine the timeliness of the suit by reference to the most appropriate statute of limitations of the state in which the action arose. *International Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966). Eleven days prior to oral argument in the case *sub judice*, another panel of this court decided that, when a Fund sues to recover unpaid contributions to employee benefit trust funds, the three-year statute of limitations contained in Pennsylvania's Wage Payment and Collection Law, Pa.Stat.Ann. tit. 43, § 260.-9a(g) (Purdon 1983), governs the action. *Teamsters Pension Trust Fund v. John Tinney Delivery Service, Inc.*, 732 F.2d 319 (3d Cir.1984). On appeal, the Funds have devoted much effort toward persuading us that the *Tinney* court failed to make the proper inquiry and thus reached an unfortunate result. They contend that because they allege violations of the collective bargaining agreement, the district court should have applied the six-year limitations statute governing an action on a written contract. 42 Pa.Cons.Stat.Ann. § 5527(2) (Purdon 1981).

Whatever the merits of this position, the policies of our court dictate that no subsequent panel, but only the *in banc* court, may overrule the reported opinion of a previous panel. *See* Internal Operating Procedures Chapter 8C ("... [R]eported

panel opinions are binding on subsequent panels .... Court *in banc* consideration is required to overrule a published opinion of this court."). Accordingly, the district court in this case did not err in applying the shorter limitations period.

### B.

■ Throughout this litigation, the Funds have contended that the search for the proper statute of limitations may ultimately prove beside the point because such statute did not begin to run until the completion of the compliance audit in early 1981. In a brief discussion of the issue of tolling under Pennsylvania law, the district court rejected the contention and refused to toll the statute. We believe that the issue should be reexamined by the district court on remand, at which time the district court will have the opportunity to further develop the factual record and integrate such findings with the relevant case law.

In recent years, other courts have encountered the tolling question in situations similar to that faced here by the district court. In *Seymour v. Hull & Moreland Engineering*, 418 F.Supp. 190 (C.D.Cal. 1976), *modified on other grounds*, 605 F.2d 1105 (9th Cir.1979), trustees of health and welfare and pension funds brought suit against an employer obligated under a collective bargaining agreement to make payments by means of a self-reporting system, alleging *inter alia* that the employer had failed to make contributions on behalf of certain employees. Holding for the funds on most of the elements of their claim, the court, applying California law, concluded that "no portion of plaintiffs' claims are [sic] barred by the statute of limitations" because:

> The statute of limitations was tolled until plaintiffs obtained knowledge of the facts upon which their cause of action is based. The tolling was caused by defendants' breach of the trust and confidence plaintiffs placed in defendants to report hours and pay contributions required by the Agreement.

418 F.Supp. at 197.

A similar situation unfolded in *Bugher v. Consolidated X-Ray Service Corp.*, 515

F.Supp. 1180, *aff'd,* 705 F.2d 1426 (5th Cir. 1983). Trustees of health and welfare and pension funds brought suit against an employer likewise obligated under a collective bargaining agreement to make payments to the funds by means of a self-reporting system. As in *Seymour,* the funds in *Bugher* alleged that the employer had underreported and thus failed to contribute as much as it owed. The court agreed with the funds. Accordingly, it concluded that under Texas law such conduct by the employer served to toll the applicable statute of limitations, permitting the funds to recover all contributions that the employer had failed to make. 515 F.Supp. at 1183.

The district court's discussion of the tolling issue in the case *sub judice* gives no indication that previous courts have struggled with the identical issue and concluded that tolling may represent the appropriate course of action. Instead, the district court merely cites several recent cases that discuss the Pennsylvania law of tolling in cases having little in common with the case at bar—*Gee v. CBS, Inc.,* 471 F.Supp. 600 (E.D.Pa.), *aff'd,* 612 F.2d 572 (3d Cir.1979), and *Knuth v. Erie-Crawford Dairy Association,* 463 F.2d 470 (3d Cir.1972)— and concludes that those cases compel us to reject the Funds' plea to toll the statute. We do not find the question so uncomplicated.

In *Gee,* 471 F.Supp. at 617–37, the court engaged in an extensive discussion of the matter of tolling under Pennsylvania law. The court enumerated several types of situations in which tolling had been invoked, among them cases involving the doctrines of inherent fraud, fraudulent concealment, and breach of a fiduciary duty.

The district court in this case, citing *Gee* and *Knuth,* apparently believed that, of the diverse situations justifying tolling under Pennsylvania law, only fraudulent concealment could potentially apply. It then pro-

ceeded to conclude that, because "the plaintiffs' complaints in the consolidated actions do not contain any allegations of affirmative, independent acts of concealment by the [d]efendant," the Funds could not have the statute tolled. These conclusions raise at least two problems that must be addressed on remand.

First, the district court should examine the rationale of *Seymour* and *Bugher,* together with applicable Pennsylvania law to determine whether DeBolt's breach of the duty to make accurate reports and contributions under a self-reporting system itself tolled the limitations period, irrespective of any fraud, until the Funds should reasonably have learned of the breach. *See Seymour,* 418 F.Supp. at 197, and *Bugher,* 515 F.Supp. at 1183. *See also Livolsi v. City of New Castle,* 501 F.Supp. 1146, 1151 (W.D.Pa.1980); *Developments in the Law—Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1214–16 (1950). This inquiry necessarily requires the district court to examine *Seymour* and *Bugher* and decide whether the theory underlying such cases proves inconsistent with Pennsylvania law. It may also require further development of the record in order to determine whether, given all the circumstances, the Funds exercised sufficient diligence to preserve their rights. *See Gee,* 471 F.Supp. at 630.

Second, the district court's conclusions with regard to the fraudulent concealment issue need to be spelled out in greater detail. If the problem is with the Funds' complaints, the court should act on the plaintiffs' motion to amend.[4] We agree, of course, that fraud, and thus fraudulent concealment, must be pleaded with particularity. *Walters v. Ditzler,* 424 Pa. 445, 227 A.2d 833 (1967); Fed.R.Civ.P. 9(b). Nevertheless, the district court should reexamine the means by which DeBolt regularly submitted its list of names and contributions.

---

4. At oral argument on May 28, 1981, the district court advised the Funds that in order to have the statute tolled they would have to amend their complaints to allege "some kind of fraud." Counsel replied that plaintiffs would do so. On appeal, the Funds allege that they moved to amend their complaint but that the district court failed to act on their motion. Should this be the case, the confusion should be clarified on remand.

If, for instance, such submissions contained an express certification clause equivalent to that in *Bugher*,[5] the court should determine whether such a clause satisfies the requirement of an "affirmative effort ... to conceal" under *Gee, Knuth,* and *Overfield v. Pennroad Corp.*, 146 F.2d 889 (3d Cir.1944). Should no such certification clause be present, the court should decide whether the mere act of submitting an incomplete list of names and contributions under a self-reporting system constitutes an affirmative act under the Pennsylvania law of fraudulent concealment. The court should make whatever additional factual findings it deems necessary to the disposition of the tolling issue.

Accordingly, we will affirm in part and reverse in part, and as to the issues on which we reverse, we will vacate the judgments and remand for further proceedings consistent with this opinion.[6]

WEIS, Circuit Judge, concurring.

I join in the court's opinion but wish to add a few comments on the tolling issue.

A statute of limitations represents a legislative policy judgment on how long a plaintiff may delay bringing suit without being unfair to the defendant. That being so, exceptions should not be freely allowed, and the plaintiff bears the burden of establishing that the statute has been tolled. *Swietlowich v. County of Bucks*, 610 F.2d 1157 (3d Cir.1979).

In this case, the defendants' reporting obligation is based on contract. The characterization of that duty as "self-reporting" is not a talismanic phrase that imbues the obligation with fiduciary status. Also of importance is that the same contract gives plaintiffs the right to conduct periodic audits. Therefore, the inquiry into the plaintiffs' diligence has more significance than where a party does not have the access to information available to plaintiffs here.

The district court cases of *Seymour v. Hull & Moreland Engineering*, 418 F.Supp. 190 (C.D.Cal.1976), *modified on other grounds*, 605 F.2d 1105 (9th Cir. 1979), and *Bugher v. Consolidated X-Ray Service Corp.*, 515 F.Supp. 1180 (N.D.Tex. 1981), *aff'd*, 705 F.2d 1426 (5th Cir.1983), must be viewed with caution. As this court's opinion notes, those cases apply the laws of California and Texas; here, Pennsylvania law controls. In addition, there was a factual finding in *Seymour* that the defendant, "knowingly in breach of the Agreement," failed to report hours worked. 418 F.Supp. at 196. In *Bugher*, the court found that there had been fraudulent concealment under Texas law.

Whether those cases are helpful in interpreting Pennsylvania law necessarily hinges first, on factual matters that are not presently in the record, and second, on a comparison of the respective state's laws on tolling. Resolution of those matters is entrusted to the district court on remand.

---

**5.** With its reports, the employer in *Bugher* returned the following statement:

> We certify that this report is a true and complete report of the hours worked by employees represented in collective bargaining by the local union shown above and such other employees as may be approved by the board of trustees but in no event includes any other employees, owners, partners or proprietors of this firm.

515 F.Supp. at 1183.

**6.** In its memorandum order of June 30, 1983, the district court awarded substantial prejudgment interest ($47,089.50 to the Pension Fund and $12,956.31 to the Health and Welfare Fund) and attorney fees ($10,000 to the Pension Fund and $5,000 to the Health and Welfare Fund) to each plaintiff. Should the remand require a recalculation of the amounts owed to the Funds, the district court should likewise recalculate the awards of interest and attorney fees in accordance with § 502(g) of ERISA, 29 U.S.C. § 1132. The district court should in any event set forth the findings that form the basis for its determination of interest and fees.