896 F.2d 43
 114 Lab.Cas. P 11,923
 Charles E. VERNAU, Sr. and Carl C. Huber, on behalf of
themselves as Trustees and the other Trustees of the UFCW,
Local 23 and Employers Health Fund, UFCW, Local 23 and
Employers Legal Fund and UFCW, Local 23 and Employers Pension Fund
v.
VIC'S MARKET, INC.
Appeal of Charles E. VERNAU, Sr. and Carl C. Huber, on
behalf of themselves as Trustees and the other Trustees of
the UFCW, Local 23 and Employers Health Fund, UFCW, Local 23
and Employers Legal Fund, and UFCW, Local 23 and Employers
Pension Fund.
 No. 89-3279.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 26, 1989.
Decided Feb. 14, 1990.
Rehearing and Rehearing In Banc Denied March 12, 1990.
 
 Joseph A. Vater, Jr. (argued), Meyer, Unkovic and Scott, Pittsburgh, Pa., for appellants.
 Daniel W. Cooper (argued), Cooper and Lepore, Pittsburgh, Pa., for appellee.
 Before HIGGINBOTHAM, Chief Judge*, and STAPLETON and SCIRICA, Circuit Judges.
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 This is an appeal from a grant of summary judgment in an action brought under the Employee Retirement Income Security Act and the Labor Management Relations Act. The district court held that the statute of limitations barred the claim and was not tolled because plaintiff failed to exercise reasonable diligence in discovering the claim. We will affirm.
 
 I.
 
 2
 Defendant Vic's Market ("Vic's") owns and operates two grocery stores. In 1981, Vic's entered into a three-year collective bargaining agreement[1] with United Food and Commercial Workers Union Local 1407 (now Local 23). The collective bargaining agreement provided that Vic's would make payments to health, legal, and pension benefit trust funds on behalf of Vic's employees, other than "customer service employees," also known as baggers. Under Article 29 of the collective bargaining agreement, baggers, whose permissible duties were limited, could not constitute more than ten percent of Vic's workforce.
 
 
 3
 Plaintiff Trustees sued Vic's on August 25, 1988, claiming that Vic's owed past-due benefit payments because it breached the agreement's ten-percent ceiling. Monthly figures supplied to the Trustees by Vic's clearly showed that the ten-percent ceiling was exceeded, often substantially, in 29 of the 31 months at issue. For example, in November 1982, the Vic's-supplied figures showed that Vic's was employing almost four times as many baggers as was permitted by Article 29. Also, in 1987, an audit by the Trustees discovered monthly underreporting of baggers. Indeed, for December 1983, the Vic's-supplied figures showed that 14.3% of its employees were baggers, but the audit fixed the figure at 53%. The Trustees maintain the remedy for these breaches of Article 29 is that for benefit-fund contribution purposes, any baggers over the ten-percent cap should be treated as if they had been benefit-eligible regular employees. The Trustees sued for these contributions[2] under Sections 502(a)(3), 502(e), 502(f) and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1132(a)(3), (e), (f), and 1145 (1982), and under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185 (1982).
 
 
 4
 Vic's claims the suit is barred by the three-year statute of limitations. The Trustees contend that the statute was tolled. The Trustees maintain that their agents who were monitoring trust fund payments were ignorant of the ten-percent limitation in the collective bargaining agreement and therefore failed to notice that the monthly figures supplied by Vic's plainly showed the ceiling was routinely and substantially exceeded. In addition, the Trustees argue even if their agents had known of Article 29, they would not, with reasonable diligence, have detected the employees not reported by Vic's.
 
 
 5
 Vic's responds that the Trustees' failure to inquire further when Vic's monthly contributions forms on their face showed continuing more than de minimis breaches of Article 29, and the Trustees' failure to inform their agents who monitored trust fund contributions of the terms of the contract, constitute an unreasonable lack of diligence. With reasonable diligence, according to Vic's, the Trustees would have seen the continuing breach, and would have investigated and acted upon it and on any underreporting revealed by an investigation. Vic's argues that under Pennsylvania tolling principles, the statute cannot be tolled when plaintiff has failed to use reasonable diligence which would have revealed the existence of a cause of action.
 
 
 6
 Our review is plenary of the district court's interpretation of the applicable tolling principles and of its conclusion, based on the undisputed facts in the record, that the circumstances did not give rise to a tolling of the statute of limitations.
 
 II.
 
 7
 We must first determine the proper statute of limitations. ERISA contains no applicable statute of limitations. Trustees for Alaska Laborers v. Ferrell, 812 F.2d 512, 516 (9th Cir.1987). When ERISA lacks an applicable limitations statute, the courts are obliged to apply the most analogous state statute of limitations. Connors v. Consolidation Coal Co., 866 F.2d 599, 603 (3d Cir.1989) (citing DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 158-60, 103 S.Ct. 2281, 2287-89, 76 L.Ed.2d 476 (1983)). Similarly, because the LMRA lacks an explicit limitations period for this type of action reference to the most analogous state statute of limitations is appropriate. Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620, 625 (3d Cir.1984).
 
 
 8
 In Teamsters Pension Trust Fund v. John Tinney Delivery Service, Inc., 732 F.2d 319, 322 (3d Cir.1984), a case brought in Pennsylvania to recover unpaid benefits under the LMRA, we applied the three-year statute of limitations period in Pennsylvania's Wage Payment and Collection Law, 43 Pa.S.A. Sec. 260.9a(g) (Purdon Supp.1989) as the most analogous state statute. Because the action is essentially the same under the LMRA and ERISA, we will apply Tinney to ERISA.[3] Because the contracts in question terminated in July 1984 and the action was brought in August 1988, the Trustees' action is barred by the statute of limitations, unless its running is tolled.
 
 III.
 
 9
 In Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975), the Court held that state tolling principles are generally to be used by a federal court when it is applying a state limitations period
 
 
 10
 Any period of limitation ... is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action.... In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.
 
 
 11
 Id. at 463-64, 95 S.Ct. at 1722. The Court explained, however, that the rule need not be followed when state tolling principles are not consistent with underlying federal policy:
 
 
 12
 Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide.... [C]onsiderations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration.
 
 
 13
 Id. at 465, 95 S.Ct. at 1722.
 
 
 14
 Under Pennsylvania tolling principles, the statute is tolled until "plaintiffs knew or using reasonable diligence should have known of the claim." Urland v. Merrell-Dow Pharmaceuticals, Inc.,[4] 822 F.2d 1268, 1272 (3d Cir.1987). "[T]he Supreme Court of [Pennsylvania] views tolling of the statute of limitations in terms of the 'knew or should have known' standard whether the statute is tolled because of the discovery rule or because of fraudulent concealment." Id. at 1273. Reasonable diligence has been defined as follows: "There are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." Ibid. (quoting from Deemer v. Weaver, 324 Pa. 85, 90, 187 A. 215, 217 (1936)). Knowledge of the claim also has been defined: "plaintiffs need not know that they have a cause of action or that the injury was caused by another party's wrongful conduct," id. at 1275, for " 'once [a plaintiff] possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim,' " ibid. (quoting Berardi v. Johns-Manville Corp., 334 Pa.Super. 36, 44, 482 A.2d 1067, 1071 (1984) (emphasis in original)).
 
 
 15
 Thus, under Pennsylvania's tolling principles, the Trustees need only meet the standard of reasonable diligence in order for the statute to be tolled. These tolling principles are not inconsistent with federal law. Cf. Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620 (3d Cir.1984).[5]
 
 IV.
 
 16
 It is undisputed that month after month, for over two years, Vic's supplied the Trustees with figures showing the number of baggers and total employment at Vic's two markets. Because the ceiling on baggers was ten percent, the Trustees needed only to move the decimal point in the total employment number and compare the resulting number to the number of baggers reported.[6] Had the Trustees done so, they would have known instantly that Vic's was in continuing more than de minimis breach of contract. A reasonably diligent agent for the Trustees would perform such an easy calculation. Furthermore, the records show that the Trustees did not simply receive and file Vic's monthly reports. Affidavits submitted by the Trustees state that their agents frequently revised the reported figures, based on information from the union or elsewhere, in order to make corrections (see, e.g., A-291a).
 
 
 17
 The Trustees' argument that the simple calculation was not performed because they had not informed their agents about Article 29 cannot support an assertion of reasonable diligence. If, as Trustees now claim, the remedy for Vic's breach of Article 29 was that benefits payments were due for all baggers above the ten-percent limit, then reasonable diligence required notification to their agents of Article 29. The Trustees' failure to inform their agents cannot constitute reasonable diligence, particularly where, as here, the contract was not long and Article 29 appeared on the page immediately following the articles setting forth Vic's other benefits payments obligations. We hold, therefore, that the Trustees' conduct, including its failure to inform its agents of Article 29 and its failure to perform a simple calculation with figures supplied by Vic's on forms provided by the Trustees, cannot amount to reasonable diligence that would toll the statute. We hold that the information, in such readily digestible form, possessed by Trustees should have informed them of their injury and that Vic's was its cause.
 
 V.
 
 18
 The Trustees argue that even if they should have known about Vic's continuing breach of Article 29, the statute of limitations should be tolled nonetheless as to the additional excess baggers that Vic's failed to report or deliberately concealed. This argument confuses the existence of a breach with the extent of the breach. If, as in December, 1982, the number of unreported baggers raised the percentage of employees who were baggers to 40% from the 35% reported by Vic's, the extra 5% does not constitute an independent breach of Article 29, but only amounts to an increase in the extent of the breach. A single breach of Article 29 occurred each month that the ten-percent ceiling was exceeded.[7] Therefore, each month that the figures Vic's supplied showed that the ten-percent ceiling was exceeded by a more than de minimis amount, the Trustees would, with reasonable diligence, have had knowledge of a cause of action. As we have noted, the breaches apparent from the figures supplied by Vic's were occasionally very large. Therefore, the Trustees cannot maintain that they were lulled into inaction by reported de minimis breaches, only to discover later that claims for concealed more than de minimis breaches had become time-barred.[8] In any event, the Trustees were not lulled into inaction because, by admission, they were not monitoring the figures for compliance with Article 29. By August 1987, the statute of limitations had extinguished each month's cause of action for breach of Article 29.[9] The causes of action are not revived by the fact that the Trustees, who through unreasonable lack of diligence were ignorant of the existence of continuing more than de minimis breaches, were also ignorant of the extent of those breaches.[10]
 
 
 19
 For these reasons, we will affirm the judgment of the district court.
 
 
 20
 A. LEON HIGGINBOTHAM, Jr., Chief Judge,[1] concurring in part and dissenting in part.
 
 
 21
 I join in Parts I, II and IV of the majority's opinion and concur in Part III to the extent that it suggests that "[u]nder Pennsylvania tolling principles, the statute is tolled until 'plaintiffs knew or using reasonable diligence should have known of the claim.' " Maj.Op. at 46, citing Urland v. Merrell-Dow Pharmaceuticals, 822 F.2d 1268, 1272 (3d Cir.1987). However, I dissent in Part III and in Part V to the extent that the majority holds that tolling of the statute of limitations is not appropriate for the consumer service employees (CSE's) who were never reported on the monthly invoices.
 
 
 22
 I concur with the majority that the statute of limitations has not been tolled in those instances where the number of CSE's or baggers were in fact included on the monthly invoices forwarded to the Trust Funds. Thus, I agree that when the number of CSE's exceeded the ten-percent limit imposed by Article 29 of the collective bargaining agreement, the Funds could not recover for the contract breaches as to those employees who were listed on the invoices. Obviously, the trustees could have discovered that there were a number of CSE's in excess of the ten-percent limit by comparing the total number of employees to the number of CSE's listed on the invoices in a given month.
 
 
 23
 However, no reading of the invoices would give the trustees information on the CSE's who were never listed. One of the goals of Article 29 was to limit the number of employees who could be excluded from health, legal or pension benefits. Appellant's Brief at 4. The Funds' underlying concern is that, by failing to report accurately the number of CSE's, Vic's Market concealed the actual number of its employees entitled to benefits provided by the Funds and thereby withheld making contributions to the Funds for those eligible employees. Under the majority's ruling, Vic's Market could successfully circumvent the intent of Article 29 by deliberately concealing or negligently failing to report an accurate number of CSE's on the monthly invoices.
 
 
 24
 The Funds discovered the number of CSE's never reported on the monthly invoices when an audit, covering thirty-one months of the contract, was conducted. The audit of September 1987 uncovered an average of twenty-two CSE's per month whose numbers were never listed on the invoices forwarded to the Trust Funds.[2] This translates to approximately 682 instances when CSE's were never reported by Vic's Market. As to those 682 instances where appellee either deliberately concealed or negligently failed to report to the Funds the number of CSE's in their workforce, I find no basis in law or policy to immunize Vic's Market for those contract breaches.[3]
 
 I.
 
 25
 The facts of the cases upon which the majority relies are so dissimilar from the facts of this case that the precepts announced in those cases offer, at most, marginal insight into the issues here. The majority relies primarily on Urland v. Merrell-Dow Pharmaceutical, 822 F.2d 1268 (3d Cir.1987), as the major precedent for their result. In Urland, a child and her parents brought suit against a manufacturer of a drug that the mother ingested during her pregnancy, alleging that the ingestion of the drug caused the child's birth defects. The family in Urland, had immediate notice of a defect when the child was born on February 8, 1972, with part of her left arm missing. However, the lawsuit was not filed until October 7, 1981.
 
 
 26
 At the outset it should be noted that Urland involved a jury's finding on the diligence issue.[4] The jury was given the following interrogatory:
 
 
 27
 Have Mr. and Mrs. Urland proved by a preponderance of the evidence that neither of them knew, or exercising reasonable diligence should have known, before October 7, 1979, that Benedictin was an operative cause of Julie Beth Urland's birth defect as alleged in their complaint?
 
 
 28
 Id. at 1272. The jury answered "no." Consistent with the jury's verdict, the district court entered judgment in favor of Merrell-Dow. On appeal the majority concluded:
 
 
 29
 We find no reversible error. We stress that in this case, the district court did not decide in favor of Merrell-Dow's statute of limitations defense on a pre-trial motion. Instead, the issue was fairly presented to a jury, which decided the relevant factual question adversely to the Urlands.
 
 
 30
 Id. at 1276 (emphasis added).
 
 
 31
 In contrast to Urland, where a jury decided the relevant factual questions, in this case, the district court determined prior to trial that there were no facts for the jury to decide. We are now reviewing the district court's summary judgment order to determine whether there is a disputed issue of a material fact. Ettinger v. Johnson, 556 F.2d 692 (3rd Cir.1977). At a minimum, I submit that there are sufficient disputed material facts for which this case should be remanded.
 
 
 32
 In Urland, this court affirmed the district court's judgment in favor of Merrell-Dow's statute of limitations defense, focusing on one issue --whether the parents knew or should have known "that Benedictin was an operative cause of the birth defect." Id. at 1272.
 
 The majority in Urland noted that:
 
 33
 it is clear that the interview with the reporter [and Mrs. Urland] took place in September 1979, that at the time of the reporter's phone call Mrs. Urland became aware of the Florida trial alleging a connection between Benedictin and birth defects, and that this information revived her suspicion about Benedictin being a possible cause of Julie's birth defects.
 
 
 34
 Id. at 1271.
 
 
 35
 Unlike Urland, where there was one defect known--the left arm missing--we are dealing now with the equivalent of 682 separate defects that were unknown to the trustees because material information was withheld. The Urlands knew of the missing left arm and of its possible connection with Benedictin, but here, there is no evidence that the Funds knew of the 682 instances where the employer failed to list the proper number of CSE's on the monthly invoices. The majority concludes that the Funds did not exercise "reasonable diligence" because of its failure to discover the concealed more than de minimis breaches. Maj.Op. Typescript at 10-11. With all due respect, I submit that the majority's position expands the diligence precepts far beyond the inherent logic of any Pennsylvania case which has precluded the tolling of the statute of limitations.
 
 
 36
 Another principal case relied on by the majority is Berardi v. Johns-Manville Corp., 334 Pa.Super. 36, 43, 482 A.2d. 1067 (1984), where the court held "[i]t is clear that decedent knew he had asbestosis prior to two years before filing suit." Id. 482 A.2d at 1071. I submit that Berardi is relevant as to those instances where the number of CSE's were listed on the invoices and where the invoices indicated that the employer had more than the permissible ten-percent limit of CSE's. The statute is not tolled for those instances. However, to use the language of Berardi, it certainly is not "clear" that prior to the audit, the trustees knew of the 682 instances of breaches involving employees whose numbers were never reported. The majority concludes that the Funds were on notice of the concealed breaches each month that the figures supplied by Vic's Market showed that the ten-percent ceiling was exceeded. I disagree, for such a conclusion imposes an inordinate burden on the Funds, at least for those employees who were never reported and therefore never known.
 
 
 37
 In Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620 (3d Cir.1984), this court reversed a district court's holding that the statute of limitations was not tolled in an action brought by a pension fund to recover unpaid employer contributions. We noted that "the district court merely cite[d] several recent cases that discuss[ed] the Pennsylvania law of tolling in cases having little in common with the case at bar." Id. at 626 (emphasis added). Byrnes instructs that before adopting a statute of limitations defense, the court must carefully scrutinize pension fund cases, which rely on the employer's self-reporting and honesty. In Byrnes, we noted that
 
 
 38
 the district court should examine the rationale of Seymour and Bugher, together with applicable Pennsylvania law to determine whether DeBolt's breach of the duty to make accurate reports and contributions under a self-reporting system itself tolled the limitations period, irrespective of any fraud until the Funds should reasonably have learned of the breach.[5]
 
 
 39
 Id. In the case at bar, the Funds relied on Vic's Market to report accurately the CSE's in its workforce. However, the appellee breached the trust and confidence the Funds placed in the employer to report accurately the CSE's and to pay contributions required by the agreement. The Funds did not become aware of the breaches until the audit was conducted.
 
 
 40
 Perhaps the ethical norm of today's commercial world is sinking so fast that one should presume that one's business colleague is a thief, a fraud, or one whose word you cannot trust. Perhaps we have descended to the point that a savvy business person or trustee should assume that an employer will breach her reporting obligations and withhold critical material facts. Though that may be the approaching norm in the market place for business and labor relations, I do not think this court should legitimize that decadent standard. The majority imposes a standard of diligence that suggests that even when an employer deliberately conceals or negligently fails to report relevant information involving contributions to a pension fund, trustees of the fund must assume or know the facts that the employer failed to report. Trustees, like judges, are not omniscient. I have not found a single Pennsylvania case which has been as restrictive in imposing a statute of limitations as is the majority's holding. I do not believe that Pennsylvania courts ever intended to give a wrongdoer who has withheld material information the advantage the majority gives to Vic's Market.
 
 
 41
 I do not think that our appellate court should make a finding that trustees of a pension fund should be sufficiently omniscient to know of an employer's failure to report accurately the number of its employees excluded from benefits provided by the Funds. The factual situation here, does not support the imposition of a summary judgment that precludes tolling the statute of limitations for the 682 instances that were never reported. The Funds should be given an opportunity to show whether Vic's Market deliberately concealed or negligently failed to report the number of its employees who were CSE's to circumvent the intent of Article 29 and whether the Funds used reasonable diligence to ascertain these breaches.
 
 
 42
 For the foregoing reasons, I concur with the majority's conclusion that tolling is not appropriate for the CSE's reported on the monthly invoices. However, I dissent from the majority's conclusion that tolling is not appropriately applied to those employees for whom appellee failed to report or deliberately concealed. Accordingly, I would reverse the district court as to those employees.
 
 
 
 *
 The Honorable A. Leon Higginbotham, Jr. became Chief Judge on January 16, 1990
 
 
 [1]
 Effective dates 7/12/81-7/15/84
 
 
 [2]
 Trustees claim the unpaid contributions amount to:
 Health Fund $ 5,244.00
Pension Fund 13,840.85
Legal Fund 4,612.48
 
 
 [3]
 The alternative would be Pennsylvania's four-year limitations period for contracts. 42 Pa.C.S.A. Sec. 5525 (Purdon Supp.1989). The outcome in this case is not affected by the choice between three-year and four-year periods. Should a case present itself in which the difference were determinative, Judge Scirica believes that our Court of Appeals may wish to reconsider Tinney in light of three factors: (1) Every court of appeals, save ours, to have selected a state limitations statute to apply to pension actions has chosen the state's general contract limitations period; Robbins v. Iowa Road Builders Co., 828 F.2d 1348 (8th Cir.1987), cert. denied sub nom. Easter Enterprises, Inc. v. Robbins, 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988); Trustees of the Wyoming Laborers Health & Welfare Plan v. Morgen & Oswood, 850 F.2d 613, 620-21 (10th Cir.1988) (citing cases); (2) The Supreme Court, in Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), and Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), has viewed pension-type actions as founded on the benefit trust agreements (contracts) rather than upon the collective bargaining agreements (wages); and, (3) The federal government has an interest, via the Pension Benefit Guarantee Corp. (PBGC), in the financial integrity of pension trust funds that may lead us to give actions involving trust funds a longer limitations period, if the choice between two limitations periods is, as here, not clear cut. This federal policy interest differs from a state's interest in rapid settlement of labor disputes in order to promote labor harmony
 
 
 [4]
 We find inapposite the dissent's argument to distinguish Urland on its facts. We cite Urland, a federal diversity case, only for its statement of governing Pennsylvania law, which cannot have been dependent on the facts of Urland
 
 
 [5]
 In Byrnes, a case brought under ERISA and the LMRA, we remanded to the district court, which had declined to toll the statute of limitations. Instructing the district court to review certain cases from other jurisdictions in light of Pennsylvania law, we noted that it might be proper to toll the statute, but only "until the Funds should reasonably have learned of the breach." Byrnes, 741 F.2d at 626 (citations omitted). Plainly, we did not instruct the district court to consider applying tolling principles that were inconsistent with federal law
 
 
 [6]
 E.g., if total employment were 135 in some month, the Trustees needed only to compare 13.5 to the number of baggers reported to determine if Vic's was complying with Article 29
 
 
 [7]
 We do not believe that the dissent's argument that each unreported bagger gives rise to a separate claim is relevant to the issue of tolling. Regardless of how the failure to report baggers is characterized, once Vic's actually reported a large number of excess baggers, the Trustees were on "inquiry notice" that Article 29 had been breached, and should have exercised reasonable diligence, which readily would have led to discovery of the unreported baggers. Further, we find inapposite the sections in Corbin on Contracts cited by the dissent
 
 
 [8]
 Our holding today would not control a case in which the observable breaches were de minimis
 
 
 [9]
 For a few of the months of the contract, Vic's figures revealed no breach of Article 29. But these months were sandwiched by numerous months in which more than de minimis breaches were observable from Vic's figures. A reasonably diligent trustee, faced with continuing more than de minimis breach of Article 29, and also faced with what Trustees' affidavits refer to as frequent instances in which Trustees discovered, at the time, that Vic's figures were inaccurate (A-291a, 295a), would have undertaken further investigations and actions instead of remaining inert until well after the statute had run
 
 
 [10]
 The dissent asserts that we "[impose] a standard of diligence that suggests that even when an employer deliberately conceals or negligently fails to report relevant information ... trustees ... must know or assume the facts that the employer failed to report," noting that trustees "are not omniscient." Our holding today, of course, does not hold Trustees to a standard of omniscience. We only hold Trustees to the standard of exercising reasonable diligence with the facts in their possession. As the Supreme Court has noted:
 "Statutes of limitations, which 'are found and approved in all systems of enlightened jurisprudence,' represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them'.... [W]e are not free to construe [the statute of limitations] so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims.... We should regard the plea of limitations as a 'meritorious defense, in itself serving a public interest."
 United States v. Kubrick, 444 U.S. 111, 117, 100 S.Ct. 352, 356-57, 62 L.Ed.2d 259 (1979) (citations omitted.)
 
 
 [1]
 The Honorable A. Leon Higginbotham, Jr., became Chief Judge on January 16, 1990
 
 
 [2]
 See Appellants' Brief at 16. While there may be some disagreement as to whether the appellants' figure of an average of twenty-two unreported instances per month is accurate, the appellee does not dispute this figure in its brief. If there is disagreement as to the actual number, the conflict should be resolved at trial with appropriate judicial fact finding thereafter
 
 
 [3]
 It does not make sense to merge reported breaches and unreported breaches as if they were the same. In addition, each failure to report was a separate breach giving rise to a separate claim. See A. Corbin, 4 Corbin On Contracts Sec. 951 at 824, Sec. 956 at 843 (1951)
 
 
 [4]
 The court bifurcated the issues, presenting the statute of limitations issue to the jury as a threshold matter. Urland, 822 F.2d at 1270
 
 
 [5]
 Seymour v. Hull & Moreland Engineering, 418 F.Supp. 190 (C.D.Cal.1976), modified on other grounds, 605 F.2d 1105 (9th Cir.1979) (trustees of health and welfare pension funds brought suit against an employer obligated under a collective bargaining agreement to make payments by means of a self-reporting system); Bugher v. Consolidated X-Ray Service Corp., 515 F.Supp. 1180, aff'd, 705 F.2d 1426 (5th Cir.1983) (same)