TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA AND VICINITY and Teamsters Health and Welfare Trust Fund of Philadelphia and Vicinity and Schaffer, Jr., Charles J.

v.

JOHN TINNEY DELIVERY SERVICE, INC., a/k/a John Tinney Delivery Service and Tinney, John.

Appeal of TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA AND VICINITY, Teamsters Health and Welfare Fund of Philadelphia and Vicinity and Charles J. Schaffer, Jr.

Nos. 82–1642, 83–1664.

United States Court of Appeals, Third Circuit.

Argued Jan. 24, 1984.

Decided April 12, 1984.

Rehearing and Rehearing In Banc Denied May 8, 1984.

Stephen F. Ritner (argued), Thomas W. Jennings, Sagot & Jennings, Philadelphia, Pa., for appellants.

Robert S. Esposito (argued), McGill & McGreal, P.C., Philadelphia, Pa., for appellees.

Before HUNTER and WEIS, Circuit Judges, and DUMBAULD,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Appellants, the Teamsters Pension Trust Fund of Philadelphia and Vicinity, and the Teamsters Health and Welfare Trust Fund of Philadelphia and Vicinity (the "Trust Funds" or "Funds"), brought suit in federal court to recover employee benefit contributions owed to the Funds by John Tinney Delivery Service, Inc. ("Tinney"). The district court granted the Trust Funds summary judgment as to all contributions due between October 30, 1976 and March 31, 1979, but ruled against the Funds on their claim for contractual and statutory liquidated damages. The district court denied the Trust Funds summary judgment on claims arising after March 31, 1979, ruling that those claims were beyond the scope of the original litigation. The Funds appeal from the adverse rulings; no cross-appeals have been taken. We will affirm in part

---

* Honorable Edward Dumbauld, United States District Judge for the Western District of Pennsylvania, sitting by designation.

and reverse in part, remanding the case for further proceedings.

## I.

Beginning at least as far back as 1973, defendant Tinney has been party to a series of collective bargaining agreements with Teamsters Local 107. These agreements, known as the National Master Freight Agreements, are negotiated every three years. One agreement ran from April 1, 1973 to March 31, 1976, and another from April, 1976 to March, 1979. A third is alleged to have existed from April, 1979 to March, 1982. Under these agreements, Tinney was obligated to contribute a certain amount to the Trust Funds for every hour or day worked by all employees, "regular, probationary, extra, part-time and casual."

In April, 1979, the Trust Funds audited Tinney's payroll books and records. This audit revealed a delinquency of $43,448.30, stemming from Tinney's refusal to make contributions on behalf of its "non-regular" employees. Tinney argued that because such employees rarely work long enough or consistently enough to become eligible to receive benefits from the Trust Funds, the contract provisions requiring contributions on their behalf were unconscionable and contrary to public policy.

The Trust Funds brought this action on November 9, 1979, seeking a broad range of remedies including actual damages suffered during the pendency of the litigation, liquidated damages, attorney's fees and costs, and injunctive relief.[1] The parties prepared and submitted to the court an extensive Stipulation of Facts. They stipulated to the existence and terms of the 1973–76 and 1976–79 National Master Freight Agreements, and to the dollar amounts claimed to be owed through March 31, 1979.[2]

On September 29, 1980, the Trust Funds moved for summary judgment based on the stipulated facts. The relief they requested was significantly more limited than that requested in the original complaint, although the motion was not denominated a motion for partial summary judgment. Cf. Fed.R.Civ.P. 56(d). Because the stipulation only covered payments due through March, 1979, the Trust Funds requested liquidated and actual damages only through that date, and asked for no injunctive relief at all.

Tinney also moved for summary judgment, asking the court to rule that the contract provision requiring contributions for non-regular employees was unconscionable and unenforceable. In addition, Tinney opposed any award of liquidated damages, and interposed the three-year statute of limitations contained in Pennsylvania's Wage Payment and Collection Law ("WPCL"), Pa.Stat.Ann. tit. 43, § 260.9a(g) (Purdon Supp.1983), as a bar to contributions due before November, 1976.

Complicating matters significantly, the law of employer liability for unpaid contributions underwent an important change within days of the parties' cross-motions. On September 26, 1980, President Carter signed into law the Multiemployer Pension Plan Amendments Act of 1980 ("MPPA"). Pub.L. No. 96–364, 94 Stat. 1295 (1980). This new statute, an amendment to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (1982), greatly strengthened the rights and remedies available to employee trust funds in actions brought against delinquent employers under ERISA. In particular, the 1980 amendments provide for prejudgment interest on all unpaid contributions, and for liquidated damages of up to 20 percent.

---

1. The Trust Funds sought relief both under the terms of the collective bargaining agreement, see 29 U.S.C. § 185 (1982), and under a Pennsylvania statute, the Wage Payment and Collection Law, Pa.Stat.Ann. tit. 43, § 260.1 et seq. (Purdon Supp.1983).

2. The Stipulation stated in particular:

10. There is no good faith dispute or contest as to the amount of unpaid Health and Welfare and Pension Fund contributions referred to above [totalling $43,448.30] nor does Tinney possess a right of set-off or counter-claim against the Funds which would explain Tinney's non-payment of the monies described above.

MPPA § 306(b), 29 U.S.C. § 1132(g) (1982). On October 16, 1980 the Trust Funds moved the court for leave to amend their complaint to incorporate the rights and remedies newly available under the MPPA.

On June 10, 1981, the district court ruled on the parties' cross-motions for summary judgment, granting and denying each in part. Of greatest importance to the parties, though not appealed here, the court rejected Tinney's unconscionability defense and ordered Tinney to pay the amount stipulated to be due through March, 1979. The court split on the subsidiary issues, granting the Funds attorney's fees and costs but denying them liquidated damages, and adopting the three-year WPCL statute of limitations. The Trust Funds appeal the court's rulings on the limitations period and liquidated damages.

The district judge never ruled on the Trust Funds' motion to amend their complaint, declaring that his June 10 order granted the Trust Funds all the relief to which they were entitled, under the new law as under the old. The Trust Funds contend on appeal that the judge should have granted them leave to amend and, further, given retroactive effect to the new rights and remedies contained in the MPPA.

The course of the litigation below did not end with the June 10 order. Subsequent audits of Tinney's books had revealed substantial and continuing delinquencies arising after March, 1979. In September, 1981, the Trust Funds moved again to amend their complaint. This new motion sought once again to incorporate the MPPA rights and remedies, and also sought to add as defendants certain corporate officers of Tinney. In addition, the Trust Funds sought to clarify their claim to the recently documented post-1979 delinquencies. The motion to amend was accompanied by a motion for partial summary judgment and for injunctive relief regarding those post-1979 contributions.

The district court judge denied the Trust Funds' motions in their entirety. He viewed the motions to amend as an untimely effort to bring new issues and new defendants into a case that he had already decided. The motion for partial summary judgment and injunctive relief he treated as adjunct to, and dependent upon, the untimely effort to amend. Consequently, he denied that motion as well. The Trust Funds appeal this latter denial, contending that post-1979 relief was compassed by their original complaint and was independent of the rejected motion to amend.

## II.

In brief, the Trust Funds present three issues on appeal. The first is whether the district court was correct in applying the three-year WPCL statute of limitations. The second is whether the Trust Funds are entitled to prejudgment interest and liquidated damages under the 1980 MPPA act, and whether the district court should have granted the Trust Funds leave to amend their complaint to incorporate those remedies. Third, we are asked to decide whether the district court erred in refusing to grant summary judgment in favor of the Trust Funds for their post-1979 claims.

### A. *Statute of Limitations*

█ It is by now well settled that the relevant statute of limitations in actions to enforce collective bargaining agreements under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982), is the appropriate state statute of limitations. *U.A.W. v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966). The court below applied the three-year statute of limitations contained in Pennsylvania's Wage Payment and Collection Law. Pa.Stat.Ann., tit. 43, § 260.9a(g) (Purdon Supp.1983). The Trust Funds argue that the court should instead have applied the Pennsylvania six-year statute of limitations governing actions on written contracts. 42 Pa.Cons.Stat.Ann. § 5527(2) (Purdon 1981).

We agree with the district court that the WPCL statute of limitations was the most appropriate. The WPCL governs state-based claims for collection of unpaid

wages, which are defined to include contributions to employee benefit trust funds. Because this state cause of action mirrors the federal cause of action alleged here by the Trust Funds, its statute of limitations is clearly more "appropriate" than the general six-year statute urged by the Trust Funds.

### B. Motion to Amend Complaint to Reflect MPPA

■ The district court declined to rule on the Trust Funds' October 16, 1980 motion to amend their complaint to incorporate the 1980 Multiemployer Pension Plan Amendments. The court expressed no opinion on the merits of the Trust Funds' motion, stating, "Because I award plaintiffs actual damages and attorney fees and costs, I find it unnecessary to rule on plaintiff's motion for leave to file an amended complaint." App. at 493a.

It is evident that the district court misconceived the impact of the 1980 amendments. Those amendments did create a statutory right to actual damages, 29 U.S.C. § 1132(g)(2)(A) (1982), and to attorney's fees and costs, $id.$ § 1132(g)(2)(D), and to that extent duplicated the contract terms on which the judge based his award of damages and attorney's fees and costs. But the 1980 amendments also created an array of other remedies not available under the collective bargaining agreement. In particular, the amendments direct that the court "shall award" prejudgment interest and some form of liquidated damages upon finding an employer in violation of its obligation to make contributions.[3] Because the 1980 amendments do expand the remedies potentially available to the Trust Funds, we find the court below erred in

failing to entertain the Trust Funds' motion to incorporate those remedies.

■ Tinney argues that the court's ruling was correct nonetheless, taking the position that the 1980 rights and remedies should not be applied retroactively. We do not agree. "[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Nothing in the language or the legislative history of the MPPA suggests such a contrary intention, *see Central States, Southeast & Southwest Areas Pension Fund v. Alco Express Co.,* 522 F.Supp. 919 (E.D.Mich.1981), and the courts are virtually unanimous in ruling that the 1980 amendments should apply retroactively, absent "manifest injustice" in a particular case. *San Pedro Fishermen's Welfare Trust Fund Local 33 v. Di Bernardo,* 664 F.2d 1344 (9th Cir.1982); *Painters District Council No. 3 Pension Fund v. Johnson,* 566 F.Supp. 592 (W.D.Miss.1983); *Allen v. Civitello,* 529 F.Supp. 46 (N.D.Ill.1981); *Alco Express,* 522 F.Supp. 919. *Compare Hammond v. James W. Griffin Co.,* 520 F.Supp. 162 (N.D.Ga.1981). Tinney would have us find "manifest injustice" here because the company stipulated to certain facts prior to the passage of the MPPA that it would have rejected in light of the amendments' enhanced rights and remedies. But Tinney fails to direct our attention to any peculiarly damning stipulations, nor do we find any in reviewing the Stipulation of Facts on our own. Consequently, we hold that the 1980 amendments properly apply to the claims in this case.

---

**3.** Section 1132(g)(2), as amended by the MPPA, provides in part that in any action in which a trust fund succeeds in collecting delinquent contributions from an employer,

the court shall award the plan—
(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
   (i) interest on the unpaid unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.
29 U.S.C. § 1132(g)(2) (1982).

We will remand the case to the district court, with instructions to permit the Trust Funds to amend their complaint to incorporate a cause of action under ERISA, as revised by the 1980 amendments, *see* 29 U.S.C. §§ 1132(g), 1145 (1982), and to award the Trust Funds any relief to which they are entitled under section 1132(g).[4]

### C. *Post-1979 Relief*

■ More than three months after the district court's June 10 resolution of the cross-motions for summary judgment, the Trust Funds presented the court with an array of new motions. One motion sought to join additional defendants; a second sought once again to incorporate the MPPA rights and remedies, and also to clarify the Trust Funds' claim to contributions due under the 1979–82 collective bargaining agreement not litigated in the earlier cross-motions. These motions were accompanied by a motion for partial summary judgment and injunctive relief, relying on the 1979–82 agreement. The district court denied these motions, and the Trust Funds appeal.[5] Because we conclude the Trust Funds are entitled to pursue their claim for contributions falling due after March 31, 1979, we will remand to the district court.

In ruling that the post-1979 claims were "new claims" that the Trust Funds were "trying to slide . . . under the adjudication filed on June 10, 1981," App. at 737a, the district court suggested that the earlier order had disposed of all the issues in the case. On the contrary, the cross-motions for summary judgment decided on June 10 were of considerably narrower scope than the original complaint. The complaint referred to "collective bargaining agreements" unspecified as to terms or expiration dates, and sought actual and liquidated damages arising "during . . . the pendency of this law suit." App. at 8a. The complaint also plainly sought to enjoin Tinney "from further violating the terms of the currently-effective collective bargaining agreement and such other collective bargaining agreements as may from time to time be entered by the parties . . . ." *Id.* In contrast, the cross-motions relied only on the 1973–76 and 1976–79 agreements and sought relief only for contracts due through March 31, 1979. Moreover, the crossmotions asked for no injunctive relief at all. The crossmotions, then, disposed of only those claims arising from contributions due through March, 1979, leaving subsequent claims under subsequent contracts undecided.

Consequently, the court proceeded on the theory that the Trust Funds' September, 1981 motion fell outside the scope of the complaint. We note that the Trust Funds must bear the blame for the court's error, for they failed properly to sort out the matters in issue and failed to alert the court to their rather confusing motion strategy. The Funds' first motion for summary judgment was captioned simply "Plaintiff's Motion For Summary Judgment," App. at 339a, and while in fact it sought only partial adjudication it conveyed the impression that the motion would re-

---

**4.** We note that § 1132(g)(2)(C) entitles employee benefit plans such as the Trust Funds to liquidated damages of as much as 20 percent of the *delinquent amount, if provided for under the plan.* The 1976–79 National Master Freight Agreement provides for liquidated damages of 10 percent, which the court below termed a "penalty" and refused to award. In light of § 1132(g)(2)(C)'s express approval of such provisions, we believe the district court erred in terming it an unenforceable penalty.

We agree, however, with the district court's determination that a "good faith" dispute existed regarding Tinney's obligation to contribute on behalf of non-regular workers, barring the Trust

Funds' claim for 25 percent liquidated damages under the Pennsylvania WPCL. Pa.Stat.Ann. tit. 43, § 260.10 (Purdon Supp.1983). On remand the *district court need only consider the 10* percent liquidated damages provided in the National Master Freight Agreement.

**5.** In the usual instance, a denial of summary judgment *is not immediately appealable,* and will not bar the movant from continuing to press the denied claims. But here, the judge denied the Trust Funds' motion because he believed it asserted claims not included in the original complaint—effectively barring further proceedings on those claims.

solve the entire litigation.[6] Later, when the Trust Funds moved for summary judgment on the remaining claims, they obscured their purpose by filing several motions at once and by failing to explain that while some of the claims they pressed were new to the litigation, the claims for post-1979 relief were not. Faced with this confusing welter of new and old claims, the court concluded quite reasonably—though, we are constrained to hold, mistakenly—that its order of June 10, 1981 had disposed of the entire suit. Because we find that the Trust Funds are entitled under their original complaint to seek damages and injunctive relief under contracts in effect after April 1, 1979,[7] we will remand for further proceedings on those claims.[8]

### III.

In accordance with the foregoing opinion, we will affirm the district court's application of the Pennsylvania WPCL statute of limitations to this case. We will remand the action to the district court to permit the Trust Funds to amend their complaint to reflect the rights and remedies afforded by the 1980 Multiemployer Pension Plan Amendments Act, and also to permit the Trust Funds to pursue those claims left unresolved by the June 10, 1981 order.

6. The Funds later conceded that they should have been titled the motion a "Motion for *Partial* Summary Judgment." App. at 548a. They attempt to explain this failure of precision by alleging that Tinney had promised it would voluntarily pay all contributions due after March, 1979 if the court found against Tinney on the 1976–79 contributions. Thus, say the Funds, they fully expected the motion for summary judgment to end their dispute with Tinney, and it was Tinney's refusal to comply with their "agreement" that made necessary the flurry of later motions.

If true, the Funds' allegation would explain their rather curious motion strategy. But it does not excuse their failure to illuminate for the court the nature and extent of the motion.

7. An argument can be made that the Trust Funds waived their right to post-1979 claims by failing to assert them in their first motion, because nothing in that motion alerted the court that these were additional claims in the lawsuit.

We note, however, that Rule 56(d) of the Federal Rules of Civil Procedure states that a

judge considering a motion for summary judgment shall "by examining the pleadings and the evidence before it and by interrogating counsel" determine which claims are ripe for Rule 56 disposition, and which require further proceedings. The Trust Funds should have been more careful in delineating for the court the issues that the first motion sought to resolve, and those it did not. But we cannot say that they thereby waived their remaining claims. We must now therefore remand to afford the Trust Funds a forum in which to seek all the relief they sought in their complaint.

8. The district court, in awarding the Trust Funds attorney's fees and costs pursuant to its June 10, 1981 order, refused to award attorney fees and costs for work after September 11, 1981, "for this time was utilized by plaintiffs' counsel in a fruitless effort to expand the litigation beyond the scope of the initial adjudication." App. at 827a. On remand, the district court should reconsider that denial in light of this opinion.