TEAMSTERS LOCAL 251, HEALTH
SERVICES AND INSURANCE
FUND, Plaintiff,

v.

TEAMSTERS, CHAUFFEURS, WARE-
HOUSEMEN AND HELPERS LOCAL
251, affiliated with the International
Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of Amer-
ica, Defendant.

Civ. A. No. 87-0281 L.

United States District Court,
D. Rhode Island.

June 27, 1988.

James T. Grady, Grady, Dumont &
Dwyer, Boston, Mass., and Patricia Zesk,
Edwards & Angell, Providence, R.I., for
plaintiff.

Richard M. Peirce, Roberts, Carroll, Feld-
stein & Tucker, Providence, R.I., for de-
fendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is before the Court on the
cross-motions of defendant for summary
judgment and of plaintiff for partial sum-
mary judgment. These motions present
this Court with three issues to decide: (1)
whether the statute of limitations provided
by R.I.Gen.Laws (1956) § 9-1-13(a) (1985
Reenactment) governs a pension fund's
right to collect delinquent contributions un-
der 29 U.S.C. § 1132; (2) whether the cur-
rent ten year limitations period provided in
R.I.Gen Laws § 9-1-13(a) applies retroac-
tively to causes of action not time-barred
on July 1, 1978 when the period was ex-
tended from six to ten years; (3) whether a
pension fund that forgets to bill an employ-
er for contributions required to be made to
the fund is estopped from seeking past
payments due when it discovers its error.
The Court heard oral arguments on these
questions on March 16, 1988. At that time,
the Court requested additional briefing on
the estoppel and retroactive limitations is-
sues and took the matter under advise-
ment. The matter is now in order for
decision.

### Background

The parties do not dispute the material
facts of this case. Plaintiff Teamsters Lo-
cal 251, Health Services and Insurance

Fund is an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1). Defendant Teamsters, Chauffeurs, Warehousemen and Helpers Local 251 is a labor union sued in its capacity as an employer as defined in 29 U.S.C. § 1002(5). At all times relevant to this case, Plaintiff Fund and defendant Union have been signatories to the Agreement and Declaration of Trust of the Teamsters Local 251 Health Services and Insurance Plan. On September 25, 1968 the trustees of plaintiff Fund adopted a benefit plan for certain officers of defendant Union. The plan included a vested death benefit, group life insurance and accidental death and dismemberment insurance. At the time of adoption, the estimated cost of the vested death benefit was $12.00 per month for each eligible employee and $6.74 per month for the group life and accidental death insurance. The actual cost of the benefits, however, required calculations by plaintiff's actuary. Therefore, defendant Union could not submit contributions on a self-reporting basis.

From 1968 to August of 1986, plaintiff Fund did not perform the actuarial calculations or submit a statement of cost to defendant for the vested death benefits, group life insurance and accidental death and dismemberment insurance. During this period, the Union did not contribute money to the Fund for these benefits because it did not receive a statement of costs. Plaintiff's certified public accounting firm, during eighteen annual audits, failed to realize that plaintiff had not determined costs for these benefits and that defendant had not paid for them. However, the benefits remained available to the covered employees.

In August 1986, plaintiff's new certified public accounting firm discovered that defendant had never made contributions for the vested death benefits, group life insurance and accidental death and dismemberment insurance. The accountants determined that defendant Union owed $52,708 in contributions for the period January 1, 1976 to September 30, 1986. Plaintiff notified defendant that it owed money for these benefits. On June 3, 1987, defendant tendered to plaintiff a check for $23,752—

the amount which defendant estimated it owed for the period August 1, 1983 to December 31, 1986. The parties agreed that acceptance of this payment was not an acknowledgement by either party of payment in full for either the period August 1, 1983 to December 31, 1986 or the period January 1, 1976 to September 30, 1986. A dispute has now arisen between plaintiff Fund and defendant Union as to what further sums, if any, are due. Plaintiff filed this action on May 19, 1987 seeking a declaratory judgment of the amount that defendant owes to plaintiff Fund and an award of costs and fees under 29 U.S.C. § 1132(g).

The matter is now before the Court on the parties' cross-motions for summary judgment. Summary judgment can only be granted where there is no genuine issue as to any material fact and where the movant is entitled to judgment as a matter of law. *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 986 (1st Cir.1983). In determining whether these conditions have been met, the Court must view the record in the light most favorable to the party opposing the motion. *Id.* For the reasons discussed below this Court holds that the applicable statute of limitations in an action for delinquent contributions under 29 U.S.C. § 1132 is the statute of limitations for breach of contract provided for in R.I.Gen.Laws § 9–1–13(a), that plaintiff may recover for contributions accruing since July 1, 1978, and that plaintiff is not estopped from collecting the contributions owed by defendant Union. Further proceedings will be scheduled to determine the actual amount payable to plaintiff.

### Statute of Limitations

Plaintiff brings his action for unpaid contributions under 29 U.S.C. §§ 1132 and 1145 (1985). Section 1145 provides:

*§ 1145. Delinquent contributions*

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions

in accordance with the terms and conditions of such plan or such agreement. Section 1132 authorizes a plan fiduciary to bring a civil action to enforce the contribution requirements of Section 1145. Section 1132, however, does not contain a statute of limitations. Plaintiff argues that this Court should adopt as the appropriate period, Rhode Island's ten year statute of limitations for breach of contract. *See* R.I. Gen.Laws (1956) § 9–1–13(a) (1985 Reenactment). Defendant contends that this Court should adopt a six year statute of limitations applicable to actions involving multiemployer benefit plans brought under 29 U.S.C. § 1451(f).

"When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266–267, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) (footnote omitted) (statute of limitations applicable to 42 U.S.C. § 1983 actions); *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–04, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1966) (LMRA § 301 claims); *See also DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (hybrid section 301/fair representation claims). To determine the appropriate Rhode Island statute of limitations, this Court employs the so-called "resemblance test." After examining the nature of the cause of action involved, the Court determines the most analogous state cause of action and adopts its statute of limitation. *See Walden III, Inc. v. Rhode Island*, 442 F.Supp. 1168, 1171 (D.R.I.1977), *aff'd*, 576 F.2d 945 (1st Cir.1978).

Rhode Island law does not provide a cause of action directly parallel to the federal right asserted in this case. For example, there is no Rhode Island cause of action analogous to the Pennsylvania Wage Payment and Collection Law relied on in *Teamsters Pension Trust Fund v. John Tinney Delivery Service, Inc.*, 732 F.2d 319 (3rd Cir.1984). In the absence of a parallel or "mirror-image" state cause of action, federal courts faced with claims for delinquent contributions under ERISA have applied the limitations period governing state contract actions. *See, e.g., Robbins v. Iowa Road Builders*, 828 F.2d 1348, 1354 (8th Cir.1987); *Hotel Employees v. Elks Lodge*, 827 F.2d 1324, 1328 (9th Cir. 1987); *Central States Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098 (6th Cir.1986); *Jenkins v. Local 705 Int'l Broth. of Teamsters Pension Plan*, 713 F.2d 247 (7th Cir. 1983); *Miles v. New York State Teamsters Conference Pension and Retirement Fund*, 698 F.2d 593 (2d Cir.1983), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed. 2d 108 (1983).

Rhode Island's statute of limitations for contract actions is found in R.I. Gen. Laws § 9–1–13(a) entitled "Limitations of Actions Generally." Prior to July 1, 1978 R.I. Gen. Laws § 9–1–13(a) provided for a six year statute of limitations. In 1978, however, the Rhode Island General Assembly amended § 9–1–13(a) to provide that "[e]xcept as otherwise specially provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after." P.L. 1978 ch. 299 § 2. Section 4 of P.L. 1978 ch. 299 specifically provides that "[t]his act shall apply to all causes of action accruing after July 1, 1978."

Adopting § 9–1–13(a) in this case would require applying the six year statute of limitations to causes of action for contributions due before July 1, 1978 and the ten year period to causes of action which accrued for monies due after that date. Neither the six or the ten year period is inconsistent with federal law or the policy underlying ERISA. Congress has expressed its clear desire " 'to remove jurisdictional and procedural obstacles which ... appear to ... hamper[ ] effective ... recovery of benefits due.' " *Hawaii Carpenters v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 298 (9th Cir.1987) (quoting S.Rep. No. 127, 93 Cong., 1st Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News, 4838, 4871). As the Ninth Circuit noted in *Hawaii Carpenters:*

Imposing too short a statute would interfere with the strong federal policy that

underlies ERISA. The federal government, or more specifically the Pension Benefit Guaranty Corporation will ultimately be liable for the payment of vested benefits if a pension plan is not adequately funded and terminates. In order to "encourage the continuation and maintenance of voluntary private pension plans for the benefit of their participants," "29 U.S.C. § 1302(a)(1) ... employee trust funds should be given ample opportunity to recover delinquent contributions."

*Id.*

This Court agrees with the federal courts which have held that a six year statute of limitations adequately protects federal interests in insuring that ERISA Funds are adequately funded. *See, e.g., Hawaii Carpenters v. Waiola Carpenter Shop, Inc., supra* at 298; *Trustees for Alaska Laborers v. Ferrell,* 812 F.2d 512 (9th Cir.1987); *Central States Pension Fund v. Kraftco, Inc., supra.* Clearly then a ten year statute of limitations also adequately protects these interests. Accordingly, this Court concludes that R.I. Gen. Laws § 9–1–13(a) provides the appropriate statute of limitations in this case.

Defendant argues that this Court should adopt the six year statute of limitation provided for in 29 U.S.C. § 1451(f). Section 1451(f) provides:

An action under this section may not be brought after the later of—

(1) 6 years after the date on which the cause of action arose, or

(2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

Defendant concedes that no court has applied section 1451(f) to actions for delinquent contributions. (Defendant's Memorandum in Support of Motion for Summary Judgment, p. 2). Indeed, defendant points out that the Ninth Circuit has recently rejected such an argument, holding that Section 1451 applies solely to withdrawal liability for employers. *See Trustees for Alaska Laborers v. Ferrell,* 812 F.2d 512, 517 (9th Cir.1987). Defendant argues, however, that Section 1451's period should be adopted as a uniform federal rule governing the limitations of actions for collection of ERISA contributions. A uniform rule would provide some advantages. *See Robbins v. Iowa Road Builders Co., supra,* at 1353 n. 3. (declining to apply § 1451(f) but noting that statutory amendment would be desirable for the establishment of a uniform limitations period where the trust agreements and administration are multistate). However, Congress's failure to provide a statute of limitations for actions brought under Section 1132 suggests it did not consider uniform limitations of actions to be essential for the effective administration of ERISA. Indeed, it is reasonable to assume that by omitting a statute of limitations for Section 1132 actions, Congress expected the federal courts to apply local limitation periods as long as they are consistent with the underlying policies of ERISA. As discussed above, this Court believes that the time period provided by R.I. Gen. Laws § 9–1–13(a) fully protects Congress's policy of ensuring that ERISA plans are adequately funded.

### Accrual of the Cause of Action

Under the terms of the Agreement here, plaintiff Fund was under a continuing contractual obligation to provide benefits and defendant Union was required to make periodic contributions to the Fund. When a contract for continuing performance requires that money be paid in installments, a distinct claim arises for each installment as it becomes due. *Zablowski v. New England Teamsters,* 122 R.I. 609, 410 A.2d 436, 438 (1980). "Absent a repudiation of the contract, the plaintiff may only sue for partical breaches as they occur and the statute of limitations does not begin to run against a subsequent failure to perform until it occurs." *Trustees for Alaska Laborers v. Ferrell,* 812 F.2d 512, 517 (9th Cir.1987) (citing 4A Corbin, *Corbin on Contracts* § 951 (1951)). Thus, in the present case, plaintiff developed a new

cause of action each time defendant was obligated to contribute to the Fund.

As discussed earlier, the Rhode Island General Assembly amended § 9–1–13(a) in 1978 to extend the statute of limitation from six years to ten years. Consequently, the current ten year statute of limitations applies to those causes of action that accrued for contributions due after July 1, 1978. The six year statute of limitations applied to those causes of action that accrued before that date. Notably, the 1978 amendment to R.I. Gen. Laws § 9–1–13(a) did not extend for an additional ten years the right to bring causes of action not yet time-barred under the previous six year statute of limitations. In *Twomey v. Carlton House of Providence, Inc.*, 113 R.I. 264, 320 A.2d 98 (1974), the Rhode Island Supreme Court addressed this issue as it applied to an extension of the statute of limitations for personal injury causes of action. In *Twomey* the Court held that an amendment increasing the period of limitations for personal injuries from two to three years did not apply retroactively to plaintiff's cause of action that had accrued prior to the date of amendment but was not yet time-barred. The Court based its decision largely on the language used by the legislature:

> [The Legislature] expressed the limitations period as being "within three (3) years next after the cause of action shall accrue," a phrase which is hardly the equivalent of language such as "shall have accrued" or "next after such action accrued." The phrasing selected by the Legislature clearly contemplated a future event occurring after the amendatory act became effective, whereas the language with which we have compared it can operate on past as well as future actions.

*Id.* 320 A.2d at 99 (citing *Rotchford v. Union R.R.*, 54 A. 932 (R.I. 1903)). In addition, the Court noted the "familiar rule of construction that statutes of limitations are held to be prospective only in their operation, unless by their express terms or by necessary implication they shall be held to express the legislative intent that a retroactive effect is to be given to them." *Id.*

(quoting *Rotchford v. Union R.R.*, *supra*, at 933).

In amending § 9–1–13(a) the Rhode Island General Assembly has once again employed the phrase "within [ten] years next after the cause of action shall accrue." Moreover, the General Assembly also provided that "[t]his act shall apply to all causes of action accruing after July 1, 1978." It is therefore clear that the legislature intended that only causes of action accruing after July 1, 1978 are to be governed by a ten year statute of limitations; those accruing before that date are governed by the period applicable at that time and were not extended by the amendment to R.I. Gen. Laws § 9–1–13(a).

In the present case, plaintiff filed his complaint on May 19, 1987. Plaintiff's causes of action for contributions due prior to July 1, 1978 were limited by the six year statute of limitations then in effect and are now time-barred. Plaintiff's causes of action for contributions due after July 1, 1978 are governed by the ten year statute of limitations and are not time-barred.

### Estoppel

■ Finally, defendant argues that plaintiff's failure to submit monthly bills to defendant serves to estop plaintiff from now recovering past due contributions. Section 514(a) of ERISA, 29 U.S.C. § 1144, provides that ERISA shall supercede any and all state law including case law that pertains to covered employee benefit plans. This clause has been construed as preempting state law doctrines of equitable estoppel. *See Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir.1985); *O'Grady v. Firestone Tire & Rubber Co.*, 635 F.Supp. 81, 83 (S.D. Ohio 1986). Thus, this Court must turn to federal common law for the applicable elements of estoppel. *See McNabb v. Michigan Consol. Gas Co.*, 656 F.Supp. 866, 867 (E.D.Mich.1987) (ERISA preempts state law of estoppel and mandates application of federal common law). In *Clauson v. Smith*, 823 F.2d 660 (1st Cir.1987), the First Circuit recently enumerated the elements of equitable estoppel:

(1) The party to be estopped must know the facts;

(2) He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(3) The latter must be ignorant of the true facts; and

(4) He must rely on the former's conduct to his injury.

*Id.* at 661 (citing *Hampton v. Paramount Pictures Corp.,* 279 F.2d 100, 104 (9th Cir.) *cert. denied,* 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960)). *See also Rosenthal v. National Life Insurance Co.,* 486 F.Supp. 1018 (S.D.N.Y.1980). In *Clauson,* the First Circuit explained that a party who relies on the doctrine of estoppel has the burden of proving its component elements. *Id.* at 663. The Court also made the following observations:

By their very character, claims of estoppel tend to be case-specific. "The nature of representations and of the conduct of the defendant are of crucial significance in determining whether the plaintiff is to be allowed to invoke this equitable principle." *Sanchez,* 626 F.2d at 1231 ... Some definite, unequivocal behavior must be shown—conduct fairly calculated to mask the truth or to lull an unsuspecting person into a false sense of security. Equally, it must be demonstrated that the party seeking to enforce an estoppel relied to his detriment on the interdicted behavior.

*Id.*

In the present case, defendant has not met its burden of proving the component elements of a claim for estoppel. Specifically, defendant cannot establish any "definite, unequivocal behavior" or conduct on the part of plaintiff "fairly calculated to mask the truth or lull" it into a false sense of security. For almost twenty years plaintiff failed to bill defendant, and defendant failed to contribute to the Fund. During this time, the parties either assumed the benefits were being funded or did not think about the matter at all. Not even plaintiff's certified public accounting firm, during eighteen annual audits, discovered plaintiff's failure to bill and, defendant's concomitant failure to pay. Moreover, defendant has not established that it has suffered any detriment from the plaintiff's failure to bill for contributions. For over twenty years, defendant has been saved the expense of making payments to the Fund. It has retained this money despite the fact that the benefits were available to its employees. In short, in these circumstances, plaintiff's silence (failure to bill) cannot be equated with an intentional act or representation which gives rise to an equitable estoppel.

### Conclusion

In view of the undisputed facts, plaintiff is entitled to recover contributions that defendant should have paid since July 1, 1978. Accordingly, plaintiff's motion for partial summary judgment is granted and defendant's motion for summary judgment is denied. Further proceedings will be scheduled to determine the precise amount that defendant Union must pay plaintiff Fund.

*It is so Ordered.*