**In re ELECTRICAL CARBON
PRODUCTS ANTITRUST
LITIGATION.**

MDL No. 1514.

United States District Court,
D. New Jersey.

Aug. 30, 2004.

Lisa J. Rodriguez, Esquire, Trujillo Rodriguez & Richards, LLC, Haddonfield, NJ, and Allyn Z. Lite, Esquire, Lite Depalma Greenberg & Rivas, LLC, Newark, NJ, Co–Liaison Counsel for Class Plaintiffs.

Steven A. Asher, Esquire, Fox Rothschild, LLP, Philadelphia, PA, and Melissa H. Maxman, Esquire, Duane Morris, LLP, Philadelphia, PA, and Warren Rubin, Esquire, Law Offices of Bernard M. Gross, PC, Philadelphia, PA, and Howard J. Sedran, Esquire, Levin Fishbein Sedran & Berman, Philadelphia, PA, Executive Committee for Class Plaintiffs.

Robert M. Osgood, Esquire, Jonathan C. Cross, Esquire, Sullivan & Cromwell, LLP, New York, NY, Counsel for Defendants Morgan Crucible Company, PLC, Morganite Industries, Inc., Morganite, Inc., Morgan Advanced Materials & Technology, Inc., and National Electrical Carbon Products, Inc.

Matthew M. Neumeier, Esquire, Brian D. Hansen, Esquire, Jenner & Block, LLP, Chicago, IL, and Joseph A. Martin, Esquire, Archer & Greiner, PC, Haddonfield, NJ, Counsel for Defendants Schunk of North America, Schunk Graphite Technology, and Hoffman Carbon, Inc.

Jerome S. Fortinsky, Esquire, Shearman & Sterling, LLP, New York, NY, and Michael J. Vassalotti, Esquire, Brown & Connery, LLP, Westmont, NJ, Counsel for Defendant SGL Carbon, LLC.

## OPINION

SIMANDLE, District Judge.

Presently before the Court are eight motions to dismiss filed by nine corporate defendants in this multi-district case which involves allegations that these corporate defendants, and others, "engaged in a worldwide conspiracy" between January 1990 and December 2001 "the purpose and effect of which was to fix, raise, maintain, or stabilize prices, and to allocate markets and customers for Electrical Carbon Products sold in the United States and elsewhere," in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (Third Am. Compl. ¶ 1.) The defendants involved in the present motions fall within three corporate groups: (1) the "Morgan Defendants," namely Morgan Crucible Company,

PLC, Morganite Industries, Inc., Morganite, Inc., Morgan Advanced Materials & Technology, Inc., and National Electrical Carbon Products, Inc., (2) the "Schunk Defendants," namely Schunk of North America, Schunk Graphite Technology, and Hoffman Carbon, Inc., and (3) SGL Carbon, LLC. Each company in each group asserts that the claims against it must be dismissed because the plaintiffs have failed to plead a sufficient factual basis for their claim that the defendants engaged in an antitrust conspiracy and have failed to allege, with sufficient particularity, that the defendants fraudulently concealed the conspiracy such that the four-year statute of limitations tolled during the 1990s.

The Court has considered the positions of the parties, including the oral arguments of counsel on July 28, 2004 and August 13, 2004, and has determined, for the reasons stated herein, that the defendants' motions should be denied because the plaintiffs have plead their claims with sufficient factual specificity.

1. The plaintiffs include San Francisco Bay Area Rapid Transit District, City and County of San Francisco, Metropolitan Transportation Authority, New York City Transit Authority, Metro–North Commuter Railroad Company, Long Island Rail Road Company, Southeastern Pennsylvania Transportation Authority, and Lockwood Electric Motor Service. (*See* Third Am. Compl. ¶¶ 8–12.)

2. The "Morgan Defendants" are The Morgan Crucible Company, PLC and its subsidiaries, Morganite Industries, Inc. and Morganite Electrical Carbon Ltd. and Morganite Industries' subsidiaries, Morganite Inc., Morgan Advanced Materials & Technology, Inc., and National Electric Carbon Products, Inc. (Third Am. Compl. ¶¶ 13–18.) Also included as defendants are Ian Norris, Robin D. Emerson, F. Scott Brown, and Jacobus Johan Anton Kroef, all employed by the Morgan Defendants during the relevant time period. (Third Am. Compl. ¶¶ 19–22.)

# I. BACKGROUND

Consolidated before this Court are multi-district civil actions filed on behalf of companies which purchased Electrical Carbon from five specified company groups between January 1, 1990 and December 31, 2001.[1] (Third Am. Compl. ¶ 1.) The involved companies are Morgan Crucible, PLC and five of its subsidiaries,[2] Le Carbone Lorraine S.A. and one of its subsidiaries,[3] Ludwig Schunk Stiftung e.V. and six affiliated companies,[4] SGL Carbon AG and one of its subsidiaries,[5] and C. Conradty Nuernberg GmbH. The plaintiffs allege that, between January 1990 and December 2001, these defendants "engaged in a worldwide conspiracy, the purpose and effect of which was to fix, raise, maintain, or stabilize prices, and to allocate markets and customers for Electrical Carbon Products sold in the United States and elsewhere." (Third Am. Compl. ¶ 1.) The allegations are based, in large part, on investigations undertaken by the United States Department of Justice and by the European Commission into whether there was an "international cartel engaged in

3. The "Carbone Defendants" are Le Carbone Lorraine S.A. and its subsidiary Carbone Lorraine North America Corp. and Carbone Lorraine's subsidiary, Carbone of America Industries Corp. (Third Am. Compl. ¶¶ 24–27.)

4. The "Schunk Defendants" are Ludwig Schunk Stiftung e.V. and its subsidiary, Schunk GmbH; Schunk GmbH's subsidiaries, Schunk Kohlenstoff–Technik GmbH and Schunk of North America, Inc.; Schunk of North America's subsidiary, Schunk Graphite Technology, LLC; Hoffmann & Co. Elektrokohle AG (acquired as subsidiary of Schunk Wien Gesellschaft. m.b.H. in 1999) and its subsidiary, Hoffmann Carbon, Inc. (Third Am. Compl. ¶¶ 28–35.)

5. The "SGL Defendants" are SGL Carbon AG and its subsidiary, SGL Carbon LLC. (Third Am. Compl. ¶¶ 36–38.)

fixing prices in the Electrical Carbon Products industry." (Third Am. Compl. ¶¶ 41, 51.) The United States investigation led to criminal charges against Morganite, Inc. for conspiring to fix prices of Electrical Carbon Products in the United States and against Morgan Crucible PLC, Ian Norris, Robin D. Emerson, F. Scott Brown, and Jacobus Johan Anton Kroef for obstruction of justice through document destruction and witness tampering.[6] (Third Am. Compl. ¶¶ 41–50.) The European investigation resulted in the imposi-

tion of million-euro fines on Le Carbone Lorraine, Schunk GmbH, Schunk Kohlenstoff–Technik GmbH, SGL Carbon A.G., Hoffmann & Co., and Conradty.[7] (*Id.* ¶¶ 51–54.)

By late 2002, actions were filed in several district courts by companies who had purchased Electrical Carbon Products from the defendants seeking relief pursuant to Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act.[8] The actions were combined

**6.** The Department of Justice filed an Information in the United States District Court for the Eastern District of Pennsylvania on November 4, 2002, alleging that Morganite, Inc. conspired to fix prices of Electrical Carbon Products in the United States and that Morgan Crucible attempted to influence the testimony of witnesses in an official proceeding related to the investigation of the price-fixing conspiracy and for persuading a witness to destroy documents relevant to the proceeding. (*See* Third Am. Compl. ¶¶ 42–44.) Morganite, Inc. plead guilty to the price-fixing conspiracy charge on November 4, 2002 and was sentenced with a $10,000,000 fine. (*Id.* ¶ 43.) Morgan Crucible PLC plead guilty on November 4, 2002 to the obstruction charges and was sentenced with a $1,000,000 fine. (*Id.* ¶ 45.)

On September 24, 2003, a Grand Jury in the Eastern District of Pennsylvania returned an Indictment against Robin D. Emerson, of *Morganite Electrical Carbon Ltd.*, and against Ian Norris, former CEO of Morgan Crucible PLC, for obstruction of justice and destruction of documents related to the price-fixing conspiracy. Also on September 24, 2003, the Department of Justice filed an Information against F. Scott Brown, former Global President and member of the Board of Directors of Morgan Advanced Materials & Technology, Inc., for witness-tampering and document destruction and against Jacobus Johan Anton Kroef, Managing Director in Europe of the Industrial and Traction Division of Morgan Crucible PLC, witness-tampering. (*Id.* ¶¶ 46–49.)

The charges against Ian Norris, of Morgan Crucible, were superseded on October 15, 2003, such that Norris now faces charges of

conspiring to fix prices, in addition to the witness-tampering and document destruction charges. A bench warrant was issued for Mr. Norris on October 15, 2003; he remains a fugitive from justice. The other individual defendants plead guilty to the charges in December 2003. Robin Emerson plead guilty to destruction of evidence charges on December 5, 2003, and was sentenced to five-months imprisonment and a $20,000 fine; F. Scott Brown plead guilty to the witness-tampering and destruction charges on December 8, 2003, and was sentenced to six-months imprisonment and a $20,000 fine; and Jacobus Johan Anton Kroef plead guilty to the witness-tampering charge on December 10, 2003, and was sentenced to four-months imprisonment and a $20,000 fine. (*Id.* ¶ 46–50.)

**7.** The European Commission found, in its December 3, 2003 report, that there was an "international cartel for price fixing and reducing competition with respect to electrical and mechanical carbon and graphite products" between October 1988 and December 1999, and imposed fines of 43.05 million euros on Le Carbone Lorraine, 30.87 million euros on Schunk GmbH and Schunk Kohlenstoff–Technik GmbH collectively, 23.64 million euros on SGL Carbon A.G., 2.82 million euros on Hoffmann & Co., and 1.06 million euros on Conradty. (Third Am. Compl. ¶¶ 51–54.) The Commission further found that *Morgan Crucible was a participant in the conspiracy,* but granted it immunity for providing the first information about the cartel agreements among the co-conspirators. (*Id.* ¶ 54.)

**8.** The twenty-four actions consolidated in this matter are: *South–Land Carbon Products, Inc.*

for pretrial proceedings before the undersigned District Judge pursuant to a May 13, 2003 Transfer Order of the Judicial Panel on Multidistrict Litigation, and have since been consolidated into one master action, Civil No. 03–2182 (District of New Jersey).

The matter is presently before the Court on the plaintiffs' Third Amended Consolidated Complaint and the motions of defendants Morgan Crucible Company, PLC ("Morgan Crucible"), Morganite Industries, Inc. ("Morganite Industries"), Morganite, Inc. ("Morganite"), Morgan Advanced Materials & Technology, Inc. ("MAMAT"), National Electrical Carbon Products, Inc. ("National Electric"), Schunk of North America ("Schunk"), Schunk Graphite Technology ("Schunk Graphite"), Hoffman Carbon, Inc. ("Hoffman Carbon"), and SGL Carbon, LLC ("SGL Carbon"), to dismiss the Complaint for failure to provide adequate notice of the charges and for failure to plead fraudulent concealment with particularity.[9] The Court heard the oral arguments of counsel for the Schunk defendants and the Morgan

defendants on July 28, 2004, and for SGL Carbon on August 13, 2004.

## II. DISCUSSION

### A. Conspiracy Allegations

■ Defendants Morgan Crucible, Morganite Industries, Morganite, MAMAT, National Electric, Schunk, Schunk Graphite, Hoffman Carbon and SGL Carbon first argue that the Third Amended Complaint must be dismissed because the allegations that they engaged in a conspiracy to fix the price of Electrical Carbon Products in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, are "vague and wholly conclusory" and are "based on bare legal conclusions," such that they do not provide sufficient notice of the dispute as required by Fed.R.Civ.P. 8(a).

■ Rule 8(a) provides for "notice pleading," such that a plaintiff has sufficiently alleged a cause of action by providing a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a); *see also Leatherman v. Tarrant County Narcotics*

*v. Morganite Inc., et al., Inc.,* (Civ. No. 02–5503); *Trupar America, Inc. v. Morganite Inc., et al.,* (Civ. No. 02–5668); · *Koffler Electric Mech. Apparatus Repair Inc. v. Morganite Inc., et al.,* (Civ. No. 02–5678); *Schulz Electric Co. v. Morganite Inc., et al.,* (Civ. No. 02–5767); *Joliet Equipment Corp. v. Morganite Inc., et al.,* (Civ. No. 02–5873); *Greater Cleveland Regional Transit Authority v. Morganite Inc., et al.,* (Civ. No. 02–5960); *Warfield Electric Co. v. Morganite Inc., et al.,* (Civ. No. 02–5991); *California Electric Co. v. Morganite Inc., et al.,* (Civ. No. 02–6044); *Hayes & Lunsford Electric Motor Repair, Inc. v. Morganite Inc., et al.,* (Civ. No. 02–6130); *Niagra Frontier Transportation Authority v. Morganite Inc., et al.,* (Civ. No. 03–0426); *San Francisco Bay Area Rapid Transit District v. Morganite Inc., et al.,* (Civ. No. 03–0915); *Metro–North Commuter Railroad Co., et al. v. Morganite Inc., et al.,* (Civ. No. 03–1810); *Lockwood Electric Motor Service of Trenton v. Morganite Inc., et al.,* (Civ. No. 03–2183); *U.S. Material Supply, Inc. v.*

*Morganite Inc., et al.,* (Civ. No. 03–2184); *Regional Transit Authority, etc., et al. v. Morganite Inc., et al.,* (Civ. No. 03–2185); *Pincus Elevator & Electric Co. v. Morganite Inc., et al.,* (Civ. No. 03–2186); *The Port Authority Transit Corp. v. Morganite Inc., et al.,* (Civ. No. 03–2188); *Bright Lights USA, Inc. v. Morganite Inc., et al.,* (Civ. No. 03–2189); *City & County of San Francisco v. Morganite, Inc., et al.,* (Civ. No. 03–2681); *Chicago Transit Authority v. Morganite, Inc., et al.,* (Civ. No. 03–2682); *R. Scheinert & Son, Inc. v. Morganite, Inc., et al.,* (Civ. No. 03–2683); *National Railroad Passenger Corp. v. Morganite, Inc., et al.,* (Civ. No. 03–2684); *Southeastern Pa. Transit Authority v. Morganite, Inc., et al.,* (Civ. No. 03–2685); *Ram Industries, Inc. v. Morganite Inc., et al.,* (Civ. No. 03–2686).

9. Morgan Crucible PLC also filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), but has since withdrawn its motion. [Docket Item 128–1.]

*Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *MCM v. Andrews–Bartlett & Assoc.,* 62 F.3d 967, 976 (7th Cir.1995). To state a claim for relief under Section 1 of the Sherman Act, the plaintiffs must allege:

1. a contract, combination or conspiracy;
2. a restraint of trade; and
3. an effect on interstate commerce.

*Fuentes v. South Hills Cardiology,* 946 F.2d 196, 198 (3d Cir.1991) (citing *Weiss v. York Hospital,* 745 F.2d 786, 812 (3d Cir. 1984)). Here, the defendants assert that the plaintiffs have not provided a "short and plain statement" of the first factor because they have instead made "wholly conclusory claims that defendants combined or conspired to restrain trade" of the broad "Electrical Carbon Products" market, without providing any supporting factual allegations. Plaintiffs argue, though, that the defendants have been provided sufficient notice of the Sherman Act claims because they have, in the Third Amended Complaint, identified "the conspiracy's participants, purpose, and motive." (Pl. Br. at 18 (quoting *Fuentes,* 946 F.2d at 202)).

In a detail-rich Third Consolidated Amended Class Action Complaint consisting of twenty-nine pages, the plaintiffs have plead that the conspiracy's participants included the defendants involved in these motions, the other defendants, and "various individuals, partnerships, corporations and associations other than the Defendants named in this Complaint." (Third Am. Compl. ¶¶ 13–40.) They have further plead that the purpose of the conspiracy was to "fix, raise, maintain, or stabilize prices, and to allocate markets and customers for Electrical Carbon Products sold in the United States and elsewhere," (*id.* ¶ 1), and that the motive was

to "reduce competition" such that they could charge "artificially high price[s] in the United States and elsewhere," (*id.* ¶ 71).

■ The defendants, though, assert that these allegations are not sufficient, first, because they fail to provide notice of the specific products within the broad electrical carbon products market that are at issue, and second, because they fail to provide notice of the conduct that each specific defendant is alleged to have taken in furtherance of the conspiracy. The Court finds, though, that the allegations provide sufficient notice.

First, the Court finds that electrical carbon products at issue are sufficiently defined in paragraph 7(a) which provides:

As used in this Complaint ... "Electrical Carbon Products" refers to carbon brushes and current collectors used in the manufacture of direct current electric motors, automotive applications and other transit applications as well as consumer products, and also refers to mechanical carbon products for use in pump and compressor industries. Carbon brushes are used to transfer electrical current in direct current motors by acting as the rubbing contacts for electrical connectors in motors. Direct current motors are used in a variety of products including automobiles, battery-operated electric vehicles and public transit vehicles. Carbon collectors are used to transfer electrical current from wires or rails for use in transit vehicles that are not independently powered. Mechanical carbon products are sold primarily to pump seal manufacturers and are used in fluid handling markets for containing liquids in wear situations. In this Complaint, the types of electrical and mechanical carbon products at issue include, but are not limited to, carbon

current collectors; carbon brushes sold to original equipment manufacturers for automotive applications; traction-transit carbon brushes; industrial carbon brushes for use in battery-operated vehicles; carbon brushes sold to original equipment manufacturers for use in consumer products; and mechanical carbon products for use in pump and compressor industries.

(Third Am. Compl. ¶ 7(a).) Such specificity regarding the product market at issue in this lawsuit clearly satisfies the pleading requirements of Rule 8(a). The defendants have been provided clear notice that they are alleged to have fixed the prices of certain carbon brushes and carbon current collectors that are used in direct current electric motors, automotive and transit applications, and consumer products, and of mechanical carbon products that are used in the pump and compressor industries. Therefore, contrary to the defendants' arguments, the plaintiffs have, in their Third Amended Complaint, limited the class of items within the broader electrical carbon products market which are at issue here.

■ Second, the Third Amended Complaint includes sufficient notice of the actions that the defendants are alleged to have taken in furtherance of the conspiracy. As a whole, they are alleged to have:

(a) Participated in over 140 meetings and conversations in Europe, Mexico and Canada to discuss and fix the prices of Electrical Carbon Products sold in the United States and elsewhere;

(b) Agreed during those meetings and conversations to charge prices at certain levels and otherwise to fix, increase and maintain prices of Electrical Carbon Products sold in the United States and elsewhere;

(c) Discussed and exchanged price quotations of customers of Electrical Carbon Products in the United States and elsewhere so as not to undercut the price of Defendants' co-conspirators;

(d) Sold Electrical Carbon Products at the agreed upon prices and/or in conformity with their agreement;

(e) Sold Electrical Carbon Products to customers throughout the United States and elsewhere at agreed upon prices;

(f) Agreed among themselves to allocate geographic markets and customers of Electrical Carbon Products in the United States and elsewhere so as to reduce competition and artificially raise and maintain prices;

(g) Agreed to conceal and keep secret their illegal agreement;

(h) Prior to the termination of the conspiratorial conduct, removed, concealed or destroyed documents reflecting evidence of their illegal conduct, including an anticompetitive agreement or contacts between or among their competitors; and

(i) Prior to the termination of the conspiratorial conduct, scripted false testimony to conceal their illegal conduct.

(Third Am. Compl. ¶ 72.) These allegations also provide the defendants with sufficient notice of the alleged actions that they will need to defend in this matter.

■ The defendants, though, assert that these allegations are not specific enough because they do not delineate which specific defendant is alleged to have taken which specific actions. It is true that, to satisfy pleading requirements in the antitrust context, the plaintiffs must allege that "each individual defendant joined the conspiracy and played some role in it" because, "at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *See Jung v. Assoc. of American Medical Colleges,* 300 F.Supp.2d 119, 163–

64 (D.D.C.2004) (citing cases). Simply using the "global term 'defendants' to apply to numerous parties without any specific allegations" that would tie each particular defendant to the conspiracy is not sufficient. *Id.* However, it is also true that, if "inferences can be fairly drawn from the behavior of the alleged conspirators" which indicate that they participated in the conspiracy, the Court should construe the Complaint "liberally in the plaintiffs' favor" at the motion to dismiss stage and allow the case to proceed. *Id.* at 157–58. Indeed, "in the antitrust context, where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Id.* at 157 (quoting *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)).

█ Here, accepting all of the factual allegations in the Third Amended Complaint as true, *see Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), plaintiffs have sufficiently linked the defendants involved in the present motions to the alleged price-fixing conspiracy. Plaintiffs are not required to establish that each was part of the conspiracy at this motion to dismiss stage; they are simply required to state a claim for relief as to each specific defendant. They have stated a claim here as to the defendants involved in this motion, namely Morgan Crucible, Morganite Industries, Morganite, MAMAT, National Electric, Schunk of North America, Schunk Graphite Technology, Hoffman Carbon, and SGL Carbon.

First, each Morgan defendant—Morgan Crucible, Morganite Industries, Morganite, MAMAT, and National Electric—is sufficiently linked to the conspiracy. It is true that Morganite is the only party that is alleged to have entered a guilty plea that it "engaged in a conspiracy to suppress and eliminate competition by fixing the prices of Electrical Carbon Products in the United States." (Third Am. Compl. ¶¶ 42–43.) [10] However, it is also alleged that each of the other Morgan companies was involved in some manner in the conspiracy. Morgan Crucible plead guilty to "attempting to influence the testimony of witnesses in an official proceeding related to the investigation of the Electrical Carbon Products price-fixing conspiracy, and corruptly persuading a witness to destroy documents relevant to the official proceeding," and was found to have been involved in the price-fixing conspiracy in Europe. (*Id.* ¶¶ 44–45, 54.) MAMAT is connected the conspiracy through its former Global President and member of the Board of Di-

10. Morganite has argued that its guilty plea does not provide adequate notice of the claims pending against it here because it did not plead guilty to involvement in a conspiracy as broad as that alleged in the Third Amended Complaint, instead limiting its plea to price-fixing carbon brushes sold to transit authorities and to original equipment manufacturers for battery electric vehicle applications between February 1995 through September 1998, carbon brushes sold to original equipment manufacturers for automotive applications between December 1993 through September 1998, and current collectors sold between January 1990 through May 2000. (Morganite Br. at 6–7.)

Morganite, though, has been provided adequate notice of the claims asserted against it in this matter, as the Third Amended Complaint alleges that the conspiracy lasted between January 1, 1990 to December 31, 2001, involved, at the least, those named as defendants, and was related to the product categories defined in paragraph 7(a) of the Third Amended Complaint. (Third Am. Compl. ¶¶ 1, 7(a), 13–40.) Plaintiffs have a reasonable basis to assert that Morganite's involvement in the conspiracy extended through the 1990 to 2001 period alleged here, as Morganite's plea was entered in 2002 and acknowledged involvement in a conspiracy as early as January 1990.

rectors, F. Scott Brown, who plead guilty to witness tampering and document instruction at MAMAT. (*Id.* ¶ 47.) While he did not plead guilty to his, or to MAMAT's participation in the price-fixing conspiracy, it is reasonable to assume that MAMAT was involved, as Mr. Brown took steps to destroy and suppress incriminating evidence at MAMAT.

Neither Morganite Industries, National Electric, nor any of their employees was charged with the conspiracy or with obstruction of justice. However, Morganite Industries and National Electric are also reasonably linked to the alleged conspiracy to fix prices in the United States. Morganite Industries is the corporate entity between the parent company, Morgan Crucible, located in England, which plead guilty to the obstruction charges and was found to have been involved in the conspiracy in the European Commission report, and the subsidiary, Morganite, located in the United States, which plead guilty to the price-fixing conspiracy. (Third Am. Compl. ¶ 14.) It is thus not far-fetched for plaintiffs to plead that Morganite Industries, located in United States, was also involved in the conspiracy, especially as it affected the United States, as it is the company placed directly between the European and American entities that plead guilty to some involvement in a price-fixing conspiracy. National Electric also is reasonably placed on notice as to its activities in the conspiracy through the allegations in the Third Amended Complaint. It is located in the United States and is a subsidiary of Morganite Industries, as is Morganite which plead guilty to the conspiracy. (*Id.* ¶ 18.) It is also, therefore, a subsidiary of the company that is a subsidiary of Morgan Crucible, which also plead guilty to wrongdoing in connection with the conspiracy. (*Id.* ¶ 18.) The inter-relationships of the Morgan defendants that is plead in the Third Amended Complaint, along with the guilty pleas entered by those involved with several of the Morgan companies, may be sufficient to connect each particular Morgan defendant to the alleged "international conspiracy" to inflate the prices of electrical carbon products.

In the end, it may be found that a certain Morgan defendant was not involved in the conspiracy, or had a lesser, or greater, role in the conspiracy. Clearly, the plaintiffs will be required to prove each particular defendant's culpability prior to obtaining relief from that defendant in this action. At this motion to dismiss stage, though, it is sufficient that the plaintiffs have alleged the nature of each company's relationship to the Department of Justice investigation in a manner that provides notice to the defendant of the charges pending against it, and evidences the "reasonable basis" for the allegation, *see* Fed. R.Civ.P. 11(b). Therefore, this Court finds that the Morgan defendants involved in these motions have been provided sufficient notice, pursuant to Fed.R.Civ.P. 8(a), of the nature of the claim against them in this matter.

■ Likewise, the Court finds that the plaintiffs have provided sufficient allegations which link each Schunk defendant involved in these motions, namely Schunk of North America, Schunk Graphite Technology and Hoffman Carbon, to the alleged conspiracy and which provide adequate notice of the claims at issue. Schunk of North America, Schunk Graphite Technology and Hoffman Carbon were not charged with misconduct relating to the conspiracy by the United States Department of Justice or by the European Commission. However, Schunk of North America, and its subsidiary Schunk Graphite, both located in the United States, are subsidiaries of Schunk GmbH, which

is located in Germany and which was fined, along with German company, Schunk Kohlenstoff–Technik GmbH, 30.87 million euros, for its involvement in an "international price-fixing conspiracy." (Third Am. Compl. ¶¶ 29–31, 52–53.) Hoffman Carbon, likewise, is the United States subsidiary of Hoffman & Co., an Austrian company fined 2.82 million euros for its involvement in the "international price-fixing conspiracy." (*Id.* ¶¶ 33–34, 52–54.) The Schunk defendants involved in these motions, Schunk of North America, Schunk Graphite Technology and Hoffman Carbon, therefore, are reasonably connected to an international conspiracy that extended to the United States where they are the American subsidiaries of European entities which were fined for their European involvement in the conspiracy. Therefore, this Court finds that the Schunk defendants involved in these motions have been provided sufficient notice, pursuant to Fed.R.Civ.P. 8(a), of the nature of the claims against them in this matter.

Finally, SGL Carbon has been provided sufficient notice of its alleged involvement in the conspiracy. Similar to the Schunk defendants, SGL Carbon is the American subsidiary of a European company, SGL Carbon AG, that was fined for its European involvement in the conspiracy. (Third Am. Compl. ¶¶ 36–37, 53.) Therefore, again, the plaintiffs have reasonably placed the American subsidiary, SGL Carbon, on notice in the Third Amended Complaint that it is believed to have been part of the same antitrust conspiracy for which its European parent was fined 23.64 million euros. (*Id.* ¶ 53.)

For these reasons, this Court finds that the plaintiffs have provided sufficient notice of the conspiracy allegations involved in this matter as to the defendants involved in the present motions to dismiss. In the Third Amended Complaint, the plaintiffs have not "simply recited" the language of the antitrust laws, or alleged participation by all defendants without providing "facts that might establish any participation by [certain of the defendant] companies." *See, e.g. Andrx Pharmaceuticals v. Biovail Corp. Int'l,* 256 F.3d 799, 805 (2001). Instead, the plaintiffs have provided due notice of their allegations that international company groups, comprised of European and American entities, combined to effectuate an international price-fixing scheme. Therefore, this Court will· deny the defendants' motions to the extent that they seek further amplification of the conspiracy allegations.

**B. Fraudulent Concealment Allegations**

■■■■ The Court will also deny defendants' motions to the extent that they seek more specific pleading of the fraudulent concealment charges contained within the Third Amended Complaint. In their motions, the defendants have argued that, even if the claims against them for conspiracy were properly plead, any claims which seek relief for injuries allegedly caused by the defendants more than four years prior to plaintiffs' filing of these claims [11] must be dismissed pursuant to the four-year statute of limitations contained in the Clayton Act,[12] because the plaintiffs have not plead, with sufficient

---

11. The dates on which the claims were filed against these defendants differ as the plaintiffs have added defendants throughout the pendency of this litigation.

12. *15 U.S.C. § 15b provides:*

Any action to enforce any cause of action under section 15, 15a or 15c of [the Clayton Act] shall forever be barred unless commenced within four years after the cause of action accrued.

particularity, their allegation that the statute of limitations was tolled by the defendants' fraudulent concealment of the conspiracy.

 The tolling of the statute of limitations due to "fraudulent concealment" is an "equitable doctrine [that] is read into every federal statute of limitations." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). It allows a plaintiff to file his claims after the statute of limitations has expired if he can establish that he was prevented from filing his claims within the statutory period because the defendant fraudulently concealed its actions such that the plaintiff could not know of his injury during the limitations period. *Rotella v. Wood*, 528 U.S. 549, 561, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000). To establish this tolling, the plaintiff must show:

1. an affirmative act of concealment by each defendant,

2. that the defendant's actions misled the plaintiff or relaxed its inquiry, and

3. that the plaintiff exercised due diligence during the statutory period.

*In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1178–79 (3d Cir. 1993). On a motion to dismiss, the relevant inquiries are two-fold; first, the Court must determine whether, accepting the allegations in the Complaint as true, the plaintiffs have stated a claim for fraudulent concealment, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and second, the Court must determine whether the plaintiffs have alleged underlying acts of fraudulent concealment with particularity as required by the heightened pleading standard for fraud claims provided by Rule 9(b), Fed.R.Civ. P.,[13] *see Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir.1984). Here, plaintiffs have done both; they have stated a claim for fraudulent concealment with the particularity required by Fed.R.Civ.P. 9(b).

First, the plaintiffs have alleged that the defendants fraudulently concealed the conspiracy, such that "the statute of limitations applicable to Plaintiffs' claims, as alleged in this Complaint, was tolled until at least November 4, 2002," the date on which Morganite and Morgan Crucible were charged by the Department of Justice. (Third Am. Compl. ¶ 77.) In support, they have alleged that the defendants "affirmatively concealed" their price-fixing conspiracy, that the plaintiffs could not have had any "knowledge of the combination and conspiracy alleged in this Complaint, or of any facts that could or would have led to the discovery thereof, until shortly before the filing of this action, specifically until on or about November 4, 2002" because of the defendants' actions, and that "[t]o the extent that Plaintiffs had any information regarding the allegation of collusion with respect to Electrical Carbon Products, Plaintiffs exercised due diligence." (*Id.* ¶¶ 74–75.)

 Second, plaintiffs have plead the fraudulent concealment allegations with particularity. To satisfy the particularity requirement with respect to the "concealment" factor, the plaintiff must "plead[ ] the date, place or time of the fraud," or use some other "alternative means [which] inject[s] precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir.2004). When a Clayton Act conspiracy is involved, the plaintiff must allege "active concealment"

---

**13.** Fed.R.Civ.P. 9(b) provides that "in all averments of fraud ... the circumstance con- stituting fraud or mistake shall be stated with particularity."

by at least one defendant in the conspiracy, as such an act can, if the conspiracy is established, be attributed to the other members of the conspiracy. *Davis v. Grusemeyer,* 996 F.2d 617, 624 (3d Cir.1993); *see also State of New York v. Hendrickson Bros.,* 840 F.2d 1065, 1083 (2d Cir.1988). The plaintiff may allege that the action was taken either "to prevent the plaintiff's discovery of his claim" or to ensure that the conspiracy was "of such a nature as to be self-concealing." *See Hendrickson Bros.,* 840 F.2d at 1083. Regardless, the plaintiff must plead, with particularity, at least some factual basis for his concealment allegations, because "fraudulent concealment may toll the statute only if [the defendant affirmatively] misleads a plaintiff into thinking that he does not have a cause of action." *See Davis,* 996 F.2d at 624.

Here, the plaintiffs have alleged a factual basis for their allegations that the defendants involved in the alleged conspiracy took affirmative actions to conceal the conspiracy. Defendants are correct that plaintiffs have not stated the "date, place and time of the fraud" and have not alleged specific actions taken by many of the defendants. However, they have "injected precision" into their fraud allegations which provides a sufficient "measure of substantiation" by pleading the findings of the United States Department of Justice and the European Commission and, especially, by detailing the guilty pleas entered by defendant Morgan Crucible. The Third Amended Complaint specifically refers to Morgan Crucible's pleading guilty to and admitting "all of the Counts in the Information" filed against it, which detail efforts that it took to "direct[ ] and organiz[e] the cover up of price-fixing activities

that affected the sale of Electrical Carbon Products in the United States and elsewhere." (Third Am. Compl. ¶¶ 44, 55.) The plaintiffs allege, with reference to the Information, that Morgan Crucible, with the other defendants, did so:

(a) By utilizing covert meetings, discussions and communications to devise and implement their illegal course of conduct;

(b) By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme;

(c) By giving false and pretextual reasons for the pricing of Electrical Carbon Products sold by them during the Class period and by describing such pricing falsely as being the result of competitive facts rather than collusion; and

(d) By destroying evidence of their illegal conduct and by persuading witnesses to give false testimony and other information to federal law enforcement authorities investigating possible price-fixing in the Electrical Carbon Products industry.

(*Id.* ¶ 75.) The plaintiffs further allege that these actions were taken by Morgan Crucible with others during the "time period January 1, 1990 through December 31, 2001," (*id.* ¶ 7(b)), a time period determined, in part, by the European Commission's finding that the "secret cartel" existed, with participation from Morgan, Schunk and SGL companies, between October 1988 and December 1999, (*id.* ¶ 52–55). The guilty plea entered by Morgan Crucible thus adds "some measure of substantiation" to the concealment allegations against the conspiracy as a whole.[14]

---

**14.** The defendants have argued that the pleading will not be sufficiently particular unless the plaintiffs allege specific actions taken by each specific defendant. However, if the plaintiffs can, in fact, prove that Morgan Crucible took such actions, and that each of the

■ The Court further finds that plaintiffs have plead the due diligence factor of the fraudulent concealment inquiry with sufficient particularity. This factor requires that the plaintiff "plead facts showing that he exercised due diligence in trying to uncover the claim" because "[t]he doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *Davis,* 996 F.2d at 624 n. 13.

■ The question of whether the plaintiffs exercised due diligence to uncover their claim "implicates factual questions as to when plaintiff discovered or should have discovered the elements of the cause of action." *Mathews v. Kidder, Peabody & Co.,* 260 F.3d 239, 250 (3d Cir.2001) (quoting *Davis,* 996 F.2d at 623 n. 10.) On a motion to dismiss, therefore, the issue is whether plaintiffs have alleged facts which, if accepted as true, establish that they exercised due diligence. *Mathews,* 260 F.3d at 250.

■ In determining whether a plaintiff exercised due diligence, the Court must consider:

(1) whether the plaintiffs knew or should have known of the possibility of fraud because "there were sufficient storm warnings on the horizon," and,

(2) whether, if there were such warnings, plaintiffs exercised due diligence to recognize them and to determine their origin and the extent of the fraud.

*Id.* at 251–52; *see also Prudential Ins. Co. of America v. U.S. Gypsum Co.,* 359 F.3d 226, 238 (3d Cir.2004).

other defendants was a co-conspirator with it in the price-fixing conspiracy, then the overt actions to conceal may be attributed to each

■ Here, the plaintiffs have alleged that there were no "suspicious circumstances" or "storm warnings" that would have alerted them to the possibility of fraud until the November 4, 2002 guilty pleas of Morganite and Morgan Crucible, meaning that their responsibility to investigate the fraud was not triggered until that date. Specifically, they have alleged that they "had no knowledge of the combination and conspiracy alleged in this Complaint, or of any facts that could or would have led to the discovery thereof, until shortly before the filing of this action, specifically until on or about November 4, 2002," because the defendants "[a]greed to conceal and keep secret their illegal agreement," which they did by "remov[ing], conceal[ing] or destroy[ing] documents reflecting evidence of their illegal conduct" and by "script[ing] false testimony to conceal their illegal conduct." (Third Am. Compl. ¶¶ 72(g), (h), (i), 74.) As a result, "Plaintiffs and members of the Class could not have discovered the violations at an earlier date through the exercise of due diligence because the Defendants and their co-conspirators employed acts and techniques that were calculated to conceal the existence of such illegal conduct." (*Id.* ¶ 74.)

Plaintiffs have thus alleged that they had no reason to exercise due diligence and investigate the defendants' actions until November 2002 because, prior to that date, the defendants were so successful in their intentional efforts to conceal their conspiracy that the plaintiffs, a class of reasonable Electrical Carbon Products purchasers, had no reason to suspect that they were engaged in any wrongdoing. Plaintiffs will have to prove these allegations in order to toll the statute of limita-

of them. *See Davis,* 996 F.2d at 624; *Hendrickson Bros.,* 840 F.2d at 1083.

tions, but for purposes of this motion, accepting them as true, the plaintiffs have properly alleged due diligence and have provided a specific factual basis for their allegation. Whether evidence of "suspicious circumstances" or "storm warnings" emerge during the course of discovery in this case remains to be seen.

Therefore, this Court will deny the defendants' motion to the extent that they seek more particular pleading of the fraudulent concealment claims.

## III. CONCLUSION

For the foregoing reasons, the Court will deny the motions to dismiss filed by Morgan Crucible, Morganite Industries, Morganite, MAMAT, National Electric, Schunk, Schunk Graphite, Hoffman Carbon, and SGL Carbon. Each of these parties shall serve its Answer to the Third Amended Complaint within fourteen (14) days of the entry of this Opinion and Order.

The accompanying Order is entered.

### ORDER

This matter coming before the Court on the motions to dismiss filed by defendants Morgan Advanced Materials & Technology, Inc., [Docket Item 73–1], National Electrical Carbon Products, Inc., [Docket Item 74–1], Morganite, Inc., [Docket Item 75–1], Morganite Industries, Inc., [Docket Item 76–1], Morgan Crucible Company, PLC, [Docket Item 77–1], Schunk of North America, and Schunk Graphite Technology, [Docket Item 67–1], Hoffman Carbon, Inc., [Docket Item 84–1], and SGL Carbon, LLC, [Docket Item 108–1]; the Court having heard the arguments of counsel regarding the motions of defendants Morgan Advanced Materials & Technology, Inc., National Electrical Carbon Products, Inc., Morganite, Inc., Morganite Industries, Inc., Morgan Crucible Company, PLC,

Schunk of North America, Schunk Graphite Technology, and Hoffman Carbon, Inc. on July 28, 2004 and the motion of SGL Carbon, LLC on August 13, 2004; for the reasons expressed in an Opinion of today's date and for good cause;

IT IS this *27th* day of August, 2004 hereby

**ORDERED** that the motions to dismiss of Morgan Advanced Materials & Technology, Inc., [Docket Item 73–1], National Electrical Carbon Products, Inc., [Docket Item 74–1], Morganite, Inc., [Docket Item 75–1], Morganite Industries, Inc., [Docket Item 76–1], Morgan Crucible Company, PLC, [Docket Item 77–1], Schunk of North America, and Schunk Graphite Technology, [Docket Item 67–1], Hoffman Carbon, Inc., [Docket Item 84–1], and SGL Carbon, LLC, [Docket Item 108–1], be, and hereby are, *DENIED*; and

**IT IS FURTHER ORDERED** that each of these moving parties shall file its Answer to the Third Amended Complaint within fourteen (14) days hereof.